A96A1367. IN THE INTEREST OF A. M. V. et al., children.
(474 SE2d 723)

JOHNSON, Judge.

Charlie Vincent, Jr., appeals from an order terminating his parental rights. He argues that the only evidence of unfitness introduced was one or two years old and consequently was insufficient to establish present unfitness. We disagree.

"The statutory criteria for the termination of parental rights is the two-step procedure of OCGA § 15-11-81 (a). First the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second the court considers whether termination is in the best interest of the child. Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). Among the factors which may be considered with regard to a child lacking proper parental care or control are: medically verifiable deficiency of the parent's mental or emotional health of such duration or nature as to render the parent unable to provide adequately for the child's needs; conviction of a felony and imprisonment which has a demonstrably negative effect on the quality of the parent-child relation; and physical, mental, or emotional neglect of the child." (Citation and punctuation omitted.) *In the Interest of A. Q. W.*, 217 Ga. App. 13, 14 (456 SE2d 284) (1995); OCGA § 15-11-81 (b) (4) (B) (i), (iii), (v). "Another [factor which may be considered] is a parent's egregious conduct or evidence of past egregious conduct of the parent toward the child of a physically, emotionally, or sexually cruel or abusive nature. OCGA § 15-11-81 (b) (4) (B) (iv)." (Punctuation omitted.) *In the Interest of L. M.*, 219 Ga. App. 746, 748 (2) (466 SE2d 887) (1995).

In cases involving the termination of parental rights, we review the evidence in the light most favorable to the appellee. *In the Interest of S. T.*, 201 Ga. App. 37, 40 (4) (410 SE2d 312) (1991). So viewed, the evidence shows that in June 1993, while executing a search warrant for marijuana in the residence of Charlie Vincent and his wife Jennifer Vincent, police found the couple and their five children, who ranged in age from one to five years, living in deplorable conditions. One of the officers searching the home testified that it was filled with flies and that the odors in the house, which he likened to the smell of a decomposing body, were so terrible that he was barely able to breathe. When the officer entered a bedroom, he found the mother "half nude" and the children lying on one of many piles of clothing. One of the children was sucking a dirty bottle as flies flew around the child's mouth. Human feces were found in several places on the floor, on clothing lying on the floor, and smeared on the walls and fixtures. There was very little food in the refrigerator, the kitchen sink was filled with dirty water and dead flies, and rotten food and garbage were strewn about the inside and outside of the house. Food, garbage and maggots were found in the cars in the carport, and a utility room was completely filled with garbage. Marijuana and photographs of the parents engaged in various lewd sexual poses and acts were found in

the same room as the children. The children were immediately taken into the custody of the Pierce County Department of Family & Children Services ("DFACS"). The parents were arrested and charged with possession of marijuana and cruelty to children. They later pled guilty to all of the charges and were sentenced to serve probation.

In August 1993, after a hearing and upon stipulation by the parents, the juvenile court found that the children were deprived and in need of protection and entered an order placing temporary legal custody of the children with DFACS for 18 months. The order also referred to a case plan designed to reunify the family. The order was not appealed. In January 1995, DFACS moved to extend custody of the children for an additional two years. After a hearing and stipulation by the father (the mother did not appear), the juvenile court extended DFACS' custody for another two years. In August 1995, DFACS moved to terminate the parents' rights to the children. The mother voluntarily relinquished her parental rights, and the proceeding continued with only the father contesting the termination.

In addition to Officer James Mock, whose testimony is discussed above, several other witnesses testified at the termination hearing. One foster parent of three of the children testified that the children came to the foster home with head lice, were extremely violent, and were found engaging in inappropriate sexual behavior. A kindergarten teacher who taught one of the children testified that the child always came to school dirty, improperly dressed, and with such a terrible odor that other children complained and did not want to sit near him. She added that the child was angry, disruptive, and missed approximately one-third of all school days. The teacher added that often neither parent showed up for scheduled conferences, and that the father stated at one meeting that he did not have time for the conferences.

A DFACS caseworker testified that, while in foster care, two of the children reported that their father had sexually abused them in 1993. The children told the caseworker that their father had "messed with" them, performed oral sex upon them, and forced them to touch and to perform oral sex upon him. Videotaped interviews with the boys on this subject were admitted into evidence. The father was arrested in February 1994 on child molestation charges based on the allegations, but as of the date of the termination hearing, November 30, 1995, the case had not been presented to a grand jury.

A mental health facilitator testified that two of the children are in therapeutic foster care, which is designed for children with special needs, and that one of the children stated during therapy that he is afraid of his father; the witness testified that she has seen the child try to hide upon seeing someone resembling his father. Another foster parent testified about behavioral problems exhibited by one of the

boys, including nightmares, bedwetting, and expressions of fear that his father was coming to get him.

Jennifer Vincent, the children's mother, testified that the father did not work and that he often smoked marijuana in front of the children. She also testified that while the children were in DFACS' custody the father admitted to her that he had committed the acts of sexual abuse alleged by the children.

The father, who was 25 years old at the time of the termination hearing, testified that he supports himself with Supplemental Security Income benefits which he receives for a personality disorder and asthma. He has received these benefits since he was 16 years old. He testified that he was admitted to a hospital emergency room for mental illness just a few days before the hearing in November 1995 and was ordered to take tranquilizers five times per day, which he stopped taking because they "messed up up in my — in my private areas." He testified further that between October 1995 and the termination hearing in November 1995, he lived in at least six different places, including the car.

On the one hand, the father is correct in his argument that much of the evidence adduced at the hearing concerns his circumstances at the time the children were removed from his home and placed in DFACS' custody, rather than his circumstances at the time of the termination hearing. However, he is incorrect in concluding that the evidence was therefore insufficient to show present unfitness.

In a termination case, evidence that is one or two years old is not outdated. There will necessarily be some passage of time between the date the children are taken from the parents' home and the date of the termination hearing. This is due in part to the fact that where children are removed from the home, the parent must be given an opportunity to comply with a court-ordered reunification plan before termination proceedings are initiated. See OCGA § 15-11-41 (c). The lapse of time in this case was not inordinate.

Furthermore, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue if the children were ever returned to their father. See *In the Interest of M. J. T.*, 217 Ga. App. 356, 358 (457 SE2d 265) (1995). The juvenile court considered Vincent's past conduct in making this determination.

Finally, it is clear from the court's order that the father's present circumstances were fully considered. In its order, the juvenile court specifically cited evidence of the father's source of income, his mental disability and recent hospitalization, and his lack of a stable residence. The court also considered evidence that the father admitted having sexually abused two of the children over whom he sought to regain custody. The evidence clearly shows that the children were

deprived, that the deprivation was due to lack of proper parental care, that the deprivation was likely to continue, and that the deprivation was likely to cause serious physical, mental, emotional and moral harm to the children. We are not persuaded by the father's argument that because he did not serve time in prison for the cruelty to children conviction, the conviction is not grounds for termination. The charge was for cruelty inflicted upon these particular children, and is certainly relevant to issues of whether he acted egregiously toward or physically, mentally or emotionally neglected them. Reviewing the evidence in a light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the father's rights to custody have been lost. See *Williams v. Payne*, 211 Ga. App. 57, 58 (438 SE2d 170) (1993). The juvenile court did not abuse its discretion in terminating his parental rights. See *In the Interest of M. J. T.*, supra at 358.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 16, 1996.

*McGee & McGee, James B. McGee III*, for appellant.

*Michael J. Bowers*, Attorney General, *William C. Joy*, Senior Assistant Attorney General, *Shalen A. Sgrosso*, Assistant Attorney General, *Landers & Boggs, Michael P. Boggs, Michael D. DeVane*, for appellees.