A97A1768. IN THE INTEREST OF K. H. et al., children.
(494 SE2d 69)

Judge Harold R. Banke.

In this appeal from a juvenile court order terminating the parental rights to four minor children, the appellant mother enumerates three errors.

The evidence presented at the parental rights termination hearing revealed that the mother is an alcoholic presently incarcerated on charges of cruelty to children. Each of her children have different fathers who did not contest the termination of their parental rights.

In August 1994, the Department of Family & Children Services ("DFCS") received a report of some health problems with the youngest child, then five months old, and developed a case plan which required the mother to change his diaper, keep scheduled medical

appointments, and feed him regularly. The mother did not fulfill all these goals.

In January 1995, the baby died of Sudden Infant Death Syndrome. The baby, filthy, bloody from diaper rash, and soiled with dried feces, was found in his urine-soaked crib along with roaches and beer cans.

DFCS immediately initiated custody proceedings on behalf of the other three children, K. H., C. H., and S. H. In conjunction with this action, DFCS developed a case plan for reuniting the family which required the mother to get mental health counseling, participate in a parenting class, visit the children regularly, help with their financial needs, and secure safe and sanitary housing for them. With the exception of visiting the children, the mother achieved none of these goals. When the DFCS worker pointed this out, the mother explained that she was waiting to see if she would go to prison.

In July 1995, the mother pleaded guilty to cruelty to children relating to the baby's death and the filthy conditions in which he lived. She received a ten-year sentence with five years to serve. Five days after sentencing, the mother gave birth to M. H. and DFCS immediately obtained custody of him. Throughout her pregnancy, the mother denied her condition and refused prenatal care. During her incarceration, the mother has undergone substance abuse counseling, attended parenting classes, worked in food service, and telephoned her children regularly. The mother's earliest possible parole date is in 1999.

DFCS filed its termination petition in November 1996. After a hearing, the trial court found clear and convincing evidence that the children were deprived, the deprivation was likely to continue, and that parental inability or misconduct caused the deprivation and terminated all parental rights. *Held*:

1. The mother contends that the trial court erred in denying her motion to dismiss in which she argued that the failure to conduct a hearing pursuant to OCGA § 15-11-41 (f) to review DFCS's decision not to propose a plan for reunification precluded termination of her parental rights under OCGA § 15-11-81.

The record shows that DFCS developed a case plan which incorporated a plan for reunification in January 1995 after it obtained custody of the children. In July 1996, DFCS filed another case plan which contemplated reunification. However, that month the citizen review panel recommended termination of parental rights. On September 5, 1996, the trial court entered a supplemental order pursuant to OCGA § 15-11-41 (e) incorporating both reports into its disposition in the case as the children's permanent plan.

OCGA § 15-11-41 (f) is triggered when the report DFCS submits

to the court does not contain a plan for reunification services.[1] Here, OCGA § 15-11-41 (f) did not apply because DFCS's plan contemplated reunification. Nothing in OCGA § 15-11-41 requires DFCS to submit a report not containing a plan for reunification services prior to initiating proceedings to terminate parental rights. Under the circumstances of this case, we decline to find that a hearing under OCGA § 15-11-41 (f) is a precondition to the commencement of termination proceedings under OCGA § 15-11-81. See *In the Interest of A. M. B.*, 219 Ga. App. 133, 136 (464 SE2d 253) (1995) (declining to read OCGA § 15-11-81 in conjunction with OCGA § 15-11-41 (b)).

2. The mother challenges the sufficiency of the evidence that any deprivation suffered by her children would likely continue or would not likely be remedied. In considering the termination of parental rights, a juvenile court must ascertain whether there is clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-81 (a). A finding of parental misconduct or inability hinges on evidence that, inter alia, (1) the children are deprived within the meaning of OCGA § 15-11-2; (2) the parent caused the deprivation through lack of proper care or control; and (3) the cause is "likely to continue or will not likely be remedied." OCGA § 15-11-81 (b) (4) (A) (iii). The court may consider a parent's past conduct in determining whether the deprivation is likely to continue or will not likely be remedied. *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). "In a termination case, evidence that is one or two years old is not outdated." *In the Interest of A. M. V.*, 222 Ga. App. 528, 531 (474 SE2d 723) (1996).

The record, viewed in the light most favorable to the appellee, is replete with uncontroverted evidence of past conduct demonstrating the mother's unfitness, including the filthy condition of her home and the obvious neglect of her children. *In the Interest of A. M. B.*, 219 Ga. App. at 133 (standard of review). Caseworkers investigating the baby's death discovered the shocking conditions noted above and the other children, naked and unkempt in the cold, damp house.

We share the trial court's concern that the baby's death did not seem to be a "wake-up" call to the mother. During the six months between the baby's death and her incarceration, the mother utterly failed to comply with DFCS's case plan and reunification plan, with the exception of visiting the children. The mother admitted that before her incarceration she cared more about drinking beer than parenting her children. Although the mother has attended counsel-

---

[1] OCGA § 15-11-41 (f) states: "If the report submitted to the court does not contain a plan for reunification services, upon proper notice being provided to the parents, the court shall, no later than 30 days following the filing of the report, hold a hearing to review the report and the determination that a plan for reunification services is not appropriate."

ing and parenting classes, she admitted that the prison provided rewards for her attendance. The record shows that since her imprisonment she has held a job for the first time in her life. In light of the egregiousness of her past conduct, however, these efforts, while commendable, are insufficient to invalidate the trial court's finding of clear and convincing evidence demonstrating that the deprivation suffered by the children was likely to continue.

3. The mother maintains that the trial court failed to comply with OCGA § 15-11-81 (b) (4) (C), which required it to consider whether she unjustifiably failed significantly for a period of one year before the termination petition was filed to communicate with the children, provide for their care and support, and comply with the reunification plan. In its findings, the trial court did mention the mother's failure to provide for the children's care and support and to comply with the reunification plan. In any event, a showing supporting the factors listed in OCGA § 15-11-81 (b) (4) (C) is not mandatory. *In the Interest of C. D. F.*, 222 Ga. App. 905, 908 (3) (476 SE2d 654) (1996).

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 12, 1997.

*Melinda M. Katz*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Gwendolyn A. Atkinson, Daniel M. Mitchell, Jr.,* for appellee.