A98A1441. In the Interest of F. G. et al., children.

(503 SE2d 387)

Eldridge, Judge.

Appellant Donald Ray Ramsey challenges the termination of his parental rights to his twin daughters, J. R. and H. R.[1] We affirm.

In his sole enumeration of error, Ramsey asserts that the evidence was insufficient to support the trial court's October 1997 order. "The standard of review of a juvenile court's decision to terminate parental rights is whether[,] after reviewing the evidence in the light most favorable to the [State], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) *In the Interest of T. B. R.*, 224 Ga. App. 470, 472 (480 SE2d 901) (1997); see also cases cited therein.

"The statutory criteria for the termination of parental rights is the two-step procedure of OCGA § 15-11-81 (a). First[,] the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second[,] the court considers whether termination is in the best interest of the [children]. Parental misconduct is determined by finding: 1) the [children are] deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the [children]. OCGA § 15-11-81 (b) (4) (A)." (Citations and punctuation omitted.) *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996). Several factors support a determination by the trial court that there has been a lack of proper parental care and control, including the following: "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship; . . . [e]gregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive manner; [p]hysical, mental, or emotional neglect of the child . . . or of another child by the parent; . . . [i]njury or death of a sibling under circumstances which constitute substantial evidence that such injury or death resulted from parental neglect or abuse." OCGA § 15-11-81 (b) (4) (B) (iii), (iv), (v), (vi). Further, "in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed signif-

---

[1] This case initially involved four children, four-year-old F. G., three-year-old T. G., and one-year-old twins, J. R. and H. R. At the October 1997 hearing on this action, Mary Love, the mother of the children, voluntarily relinquished her parental rights. Jerry Green, Jr., the father of F. G. and T. G., also relinquished his parental rights at this hearing.

icantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) [t]o communicate or to make a bona fide attempt to communicate with the [children] in a meaningful, supportive, parental manner; (ii) [t]o provide for the care and support of the [children] as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the [children] with the parent or parents." OCGA § 15-11-81 (b) (4) (C) (i), (ii), (iii).

1. (a) The facts of this case are as follows: prior to the birth of twin daughters J. R. and H. R. in November 1995, Ramsey and Mary Love cohabitated in a trailer in Whitfield County. Also living with the couple were Ms. Love's two small children from a previous relationship, F. G. and T. G. In 1994, the county Department of Family & Children Services ("DFACS") opened a Child Protective Services case file and began investigating reports that the children were being neglected. DFACS found that the couple was not providing a stable home for the children, i.e., they were unable to pay the rent or utilities due to their chronic unemployment.

After developing a safety plan for the family, DFACS continued to monitor the situation until December 1995, when Ramsey was arrested for marijuana possession. At the time of the arrest, he was smoking the drug in front of all four children, including the newborn twins. A DFACS caseworker testified that this arrest "confirmed" his suspicions of Ramsey's drug usage. No formal action was taken by DFACS following this incident until Ramsey's arrest on child cruelty charges a month later.

In January 1996, the couple took the children to stay with Ms. Love's mother, Mrs. Teasley, while the couple looked for jobs. Shortly after the children arrived, Mrs. Teasley noticed that two-year-old T. G. had dark bruises on his back. Mr. and Mrs. Teasley took the child to the hospital and, upon subsequent examination, multiple severe bruises were discovered on the child's back, buttocks, and legs. It was established that the child had been severely beaten with a belt. DFACS immediately took protective custody of the four children and placed them in foster care.

Ramsey subsequently pled guilty to cruelty to children in April 1996. He was sentenced to five years imprisonment, three to serve, and he has been incarcerated ever since. The trial court noted that, in addition to this felony conviction, Ramsey previously pled guilty to six separate counts of burglary in 1991, and he received a ten year sentence. He was on parole when he pled guilty to cruelty to children, and his parole was revoked. Ramsey's release date is January 24, 1999, and a parole officer indicated at the hearing that it was unlikely that the parole board would release Ramsey prior to that time. However, as a special condition of his probation, Ramsey is pro-

hibited from having any contact with any minor child without DFACS approval, including his own children.

Notably, T. G.'s beating was not the only evidence of Ramsey's violent acts toward the family. The hearing testimony consistently showed that F. G. and T. G., as well as Ms. Love, feared Ramsey. Ms. Love's stepfather, Mr. Teasley, testified that the children would "have a fit . . . screaming and carrying on" when he and his wife took the children home after a visit. Several witnesses testified that they had observed Ramsey striking the children or Ms. Love; that they saw suspicious bruises on F. G. and T. G.; and that they saw Ms. Love with a black eye following a confrontation with Ramsey.[2]

Since Ramsey's most recent incarceration, it is undisputed that he has failed to communicate *at all* with his twin daughters, who are now two years of age. He admits that he has failed to call them; to send toys, birthday cards, or Christmas presents; to send financial support; or to contact DFACS regarding the children's status and welfare. He asserts that his failure to communicate with or support the children is due to the State's alleged failure to contact him while he was incarcerated, and he further claims that he did not know how to contact DFACS. However, he admitted that he maintained regular contact with his mother, who testified that she had the name, phone number, and address of the DFACS employee assigned to the case. His mother also testified that she would have given Ramsey the name and phone number of the DFACS caseworker if he had asked for it. Further, the DFACS caseworker testified that he gave Ramsey a business card with his name, DFACS phone number, and address so that Ramsey could stay in contact with DFACS during his incarceration.

Ramsey also claims that he did not know of any DFACS requirements for his reunification with the children, including his support obligations, so that he could not be held responsible for failing to meet such requirements. Ramsey admits that he paid no child support and the evidence indicated that he was approximately $1,600 in arrears at the time of the hearing. However, a DFACS caseworker testified that Ramsey was notified that he had to do two things to avoid losing his parental rights to the children, i.e., legitimate the children and cooperate with DFACS during his incarceration.[3] It is undisputed that Ramsey has done neither.

However, even though he asserts that he was not notified regarding a reunification plan, Ramsey contends that he has made

---

[2] Ms. Love's stepfather also testified that Ramsey attacked him in the fall of 1995 by slamming a car door into his body and injuring his arms and chest.

[3] DFACS has a policy that prohibits the development of formal reunification plans for fathers that fail to legitimate their children.

progress toward meeting the DFACS requirements for regaining custody of the children. For example, Ramsey testified that he participated in a drug rehabilitation course while imprisoned; such course requirement was related to Ramsey's admission to abusing marijuana prior to his incarceration. Upon cross-examination, however, Ramsey admitted that the course was required for all inmates as a condition of their release. He also admitted that he did not enroll in a family violence or an anger management class until *after* he received his termination notice.

Further, although Ramsey points to his alleged successful completion of a parenting class as evidence of his parental fitness, the fact that he took the class *before* his January 1996 physical abuse of T. G. speaks volumes as to the effect of the class on Ramsey's parenting abilities.

After viewing the evidence in the light most favorable to the trial court's judgment, there is more than sufficient evidence to find that the children are deprived and that Ramsey's violent propensities; his present incarceration; and his total failure to contact, support, or legitimate the children is the cause of such deprivation. Further, "although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist. The nature of and circumstances surrounding appellant's convictions per se establishes the requisite aggravating circumstances in this case." (Citations and punctuation omitted.) *In the Interest of S. H.*, 204 Ga. App. 135, 139 (418 SE2d 454) (1992).

(b) " '[T]he past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue.' [Cits.]" *In the Interest of A. W.*, 231 Ga. App. 770, 773 (501 SE2d 22) (1998); see also cases cited therein; *In the Interest of K. H.*, 229 Ga. App. 307, 309 (494 SE2d 69) (1997). "In a termination case, evidence that is one or two years old is not outdated." (Citation and punctuation omitted.) *In the Interest of K. H.*, supra at 309.

In this case, there is substantial evidence of Ramsey's bad temper and violent propensities, his history of illicit drug use, his failure to maintain consistent employment, and his lack of parenting skills. A DFACS caseworker testified that, in her opinion, there is "a good possibility that [Ramsey] would lose control [of his temper] and something would happen again." It was DFACS's position that reuniting the children with Ramsey would be detrimental to the children.

Even when Ramsey is eventually released from prison, *the special conditions of his probation will prohibit him from having contact with the children* without first obtaining DFACS' permission. This fact alone indicates that Ramsey will face significant barriers to his

eventual reunification with the children. Notably, Ramsey has taken no substantial step to ensure that, in the event of such reunification, his situation will be any different than that which existed prior to his most recent incarceration. He has never legitimated the children, a relatively simple step in establishing his concern for their welfare and one that was required by DFACS for reunification. He has failed to obtain his GED and has developed no additional skills to assist him in finding and maintaining stable employment.

Under the circumstances, Ramsey's assertion that he could improve these areas of his life if given a little more time fails to "overcome the proof of unrelieved detriment already suffered by the children for their entire lives, where there is no indication but the promise to suggest hope of improvement." (Citations and punctuation omitted.) *In the Interest of N. C.*, 228 Ga. App. 875, 877 (492 SE2d 895) (1997). Accordingly, the evidence supports a finding that the deprivation is likely to continue.

(c) Further, there is sufficient evidence that the children would be harmed if maintained in foster care until they are eventually returned to Ramsey's care. Twins J. R. and H. R. were born in November 1995 and were only two months old at the time of T. G.'s abuse. Accordingly, the children have lived in foster care almost since birth and have had *no memorable contact* with Ramsey. The DFACS caseworker testified that the children are presently very good candidates for adoption.

Given the children's age, the lack of parental bonding, and their present adoptability, as well as Ramsey's violent propensities, the evidence supports a finding that the children would be harmed if Ramsey's parental rights are not terminated.

2. "If there is clear and convincing evidence of [statutorily defined] parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest[s] of the [children], after considering the physical, mental, emotional, and moral condition and needs of the [children,] including the need for a secure and stable home." OCGA § 15-11-81 (a); *In the Interest of S. H.*, supra at 139. "The same factors which prove a parent's inability to properly raise [his] children may also serve to show that termination of parental rights would be in the children's best interests. [Cit.]" *In the Interest of V. S.*, 230 Ga. App. 26, 30 (495 SE2d 142) (1997); *In the Interest of S. H.*, supra at 140. Even though Ramsey contends that his minimal efforts evince a desire to change his behavior, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of V. S.*, supra at 30; *In the Interest of K. A. C.*, 229 Ga. App. 254, 257 (493 SE2d 645) (1997).

Upon review of the facts of this case in light of the statutorily

defined considerations, this Court concludes that there was substantial clear and convincing evidence to support the termination of Ramsey's parental rights.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 29, 1998.

*Michael R. McCarthy*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Jerry W. Moncus, Richard K. Murray*, for appellees.