A98A1287. IN THE INTEREST OF A. M. N. et al., children.
(506 SE2d 693)

BEASLEY, Judge.

Terry Lynn Nelson and Bertha Lynn Perkins appeal an order terminating their parental rights to three children. They contend the

court erred in determining that the cause of the children's deprivation is likely to continue or will not likely be remedied (OCGA § 15-11-81 (b) (4) (A) (iii)), that the court and the Department of Human Resources failed to make an exhaustive and thorough search for placement with a suitable family member (OCGA § 15-11-90 (a) (1)), and that they failed to use reasonable efforts to reunite Perkins (mother) and the children.

The evidence showed that in October 1993, the parents, who were then under the influence of heroin, abandoned their three children at a store after being confronted by an employee who caught them shoplifting. The girls were eight and five years old, and the boy was seven months. After the mother threw the baby at the employee, the parents fled from the area, shoplifted in another store, and went to Florida. On the day they were abandoned, the girls were uncombed, and the baby needed a clean diaper, had no milk in his bottle, and had no socks or shoes. The Department of Family & Children Services (DFCS) took custody of the children and they were placed with Mr. and Mrs. Al Perkins, the mother's brother and sister-in-law.

In part to contact their local drug supplier, the parents returned 20 days later. Police arrested them for theft by shoplifting and abandonment, and they pled guilty. Nelson and Perkins began serving two-year prison terms with probation to follow. Nelson also pled guilty to certain charges in DeKalb County at about the same time and was sentenced to five years in prison. Perkins pled guilty to other charges in two other counties which resulted in one- and two-year prison terms and more probation.

At the request of DFCS, the juvenile court held a hearing at which both parents were present and represented by counsel. It found by clear and convincing evidence that the children were deprived under OCGA § 15-11-2 (8). Neither parent has appealed this order. Placement of the children remained with Perkins' brother, but on March 7, 1994, it was discovered that the baby boy had been moved three or four months earlier, without approval or notice, to the paternal grandmother's home in Coweta County. DFCS investigated the conditions at this location and determined they were unacceptable. Because this violated DFCS policy and endangered the girls as well, DFCS removed all three children from placement with Mr. and Mrs. Al Perkins and placed them in two foster homes, the two older girls in one home and the baby boy in another.

In January 1994 DFCS established the first of four semi-annual case plans for the family with an initial goal of reunification. Neither parent paid court-ordered child support after DFCS took custody, and although the parents corresponded with the children, their relationship with the children did not strengthen. The parents' incarcer-

ation for their felony convictions continued, and the children were not in a stable environment. In the July 1994 case plan the goal for the children was changed to "permanency," and placement with a relative was to be pursued.

On April 3, 1995, DFCS petitioned for termination of parental rights. The petition was heard by the juvenile court on November 6, 7, 11 and 13, 1995 and April 4, 1996. The two girls were among the witnesses from whom the court heard.

The evidence presented at the hearings showed that the mother had three felony incarcerations during her oldest child's life, twelve arrests, a tendency to steal, two other children placed with relatives, a history of addiction, an abusive relationship with the father, a habit of injecting heroin with her children present, difficulty ensuring that the children attended school, and a history of taking the children shoplifting.

The father had six lifetime felony incarcerations, four of which occurred in his oldest child's lifetime, twenty arrests, a tendency to steal, and another DFCS encounter ending with him surrendering his parental rights to another child. He also had a ten-year drug abuse history and had injected heroin with his children present. He disciplined the older children until blood ran from their legs, drove with them while using drugs, took them shoplifting, and beat their mother in their presence.

1. "The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost."[1] On appeal, "[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met."[2]

"Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is 'clear and convincing evidence· of parental misconduct or inability.' "[3] "A finding of parental misconduct or inability must rest on clear and convincing evidence showing: (1) the child is a deprived child as defined by OCGA § 15-11-2; (2) the lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (3) such cause of depriva-

---

[1] (Citations and punctuation omitted.) *In the Interest of E. C.*, 225 Ga. App. 12, 13 (482 SE2d 522) (1997); *Blackburn v. Blackburn*, 249 Ga. 689, 694 (2) (292 SE2d 821) (1982).

[2] *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997); *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986).

[3] *In the Interest of R. N.*, supra.

tion is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i), (ii), (iii), and (iv); [cit.] . . . If the first prong of the test is met, the trial court then considers whether termination of the parental rights is in the child's best interest."[4]

Nelson and Perkins do not contest that the children have been deprived and that their lack of parental care and control is the cause. Nor do they question that continued deprivation will likely cause serious harm to the children. The record contains ample evidence to support those findings. Rather, they insist that their parental rights may not be taken from them just because of their past behavior and incarceration, and that the Department failed to present clear and convincing evidence that the cause of the deprivation will continue.

"While it is true that past deprivation is not sufficient for termination without a showing of present deprivation, the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue."[5] This is especially true here where expert testimony shows that the irresponsible past behavior predictably will continue. The children's past deprivation, their present condition, the parents' projected future behavior and the projected impact on the children are all relevant.

Not insignificant is that the children's past experience with their parents now requires more skillful parenting than would normally have been needed. Testimony showed that the children continue to be deprived because of the lack of permanency in their lives, the lack of a bonding relationship with one person who is a consistent parental figure, and the effect of "foster care drift" which prevents a child from forming emotional attachments with others.[6]

As for the parents' projected future behavior, Nelson and Perkins were evaluated by Dr. Martin Youngleson, a clinical psychologist. He testified Perkins suffered from a personality disorder, polysubstance dependence, and the effects of childhood abuse. She lacked an understanding of her children's physical and emotional needs and of her own addiction. He found that her egocentricity, immaturity, tendency to become involved with abusive men, and history made her a likely candidate for drug relapse and an unlikely candidate for long-term, meaningful change without five to twenty years of intensive

---

[4] *In the Interest of R. D. S. P.*, 230 Ga. App. 205, 206 (495 SE2d 867) (1998).

[5] *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246) (1987).

[6] See *In the Interest of T. B. R.*, 224 Ga. App. 470, 476 (1) (d) (480 SE2d 901) (1997); *In the Interest of J. M. C.*, 201 Ga. App. 173, 175 (410 SE2d 368) (1991) (court may consider "the detrimental effects of prolonged foster care").

therapy costing a minimum of $80 per week.

During the course of the hearings an event occurred that all but confirmed Youngleson's findings. At the time of the November 1995 hearings, Perkins was assigned to a transitional facility, a work release center, for the last several months of her sentence. Her parole date was set for February 29, 1996, and the juvenile court postponed a decision on termination to provide additional time for her to attempt to demonstrate effective parenting skills once she got out. In the interim she was sent back to prison to serve the remainder of her original two-year sentence, apparently because she tested positive for drug use.

As for Nelson, Dr. Youngleson diagnosed him with antisocial personality disorder and polysubstance addiction. The doctor said that he could not form nurturing relationships and lacked insight about his addiction. The doctor found recovery from addiction and long-term change unlikely and concluded that Nelson lacked the mental and emotional health necessary to be an adequate parent.

Although imprisonment alone does not lead to termination, "where, as in this case, an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses or parole violations, this constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue."[7]

Evidence was presented showing the effects on the children. When DFCS took custody, the girls could not read and had behavioral problems. Their reading improved during their foster care. Neither child wanted to live with the father, and both expressed an aversion to being with their mother if the parents lived together. During and after visits with the parents, the middle child regressed, and she could not describe a positive experience from the period when she lived with her parents. She recounted several positive experiences to a psychologist that occurred after entering foster care. She told the court she was afraid of her father. The foster parents were interested in adopting them, and the children were capable of accepting being adopted.

Initially, the youngest child had a sleep disorder, had underdeveloped speech and motor skills, and needed occupational, physical, and speech therapy. The child had nightmares after visiting his parents. By the time of the hearings, the child was developmentally

---

[7] (Emphasis omitted.) *In the Interest of S. K. L.*, 199 Ga. App. 731, 733 (1) (405 SE2d 903) (1991); *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992); *In the Interest of T. B. R.*, supra at 474 (1) (c); *In the Interest of K. J.*, 226 Ga. App. 303, 307 (2) (a) (486 SE2d 899) (1997).

on target. The boy essentially did not know his parents, and the foster parent wanted to adopt him.

All three children were examined by psychologist Dr. Barrie Alexander. She opined that the young boy had already attached to his foster parent and that removing him would be traumatic and long-term damage could result if he were placed back with his biological parents.

As for the girls, the younger had already begun the process of disengaging from her mother and was open to adoption by a new family. Both girls stated they cared for their mother but that they did not believe things would change. Dr. Alexander stated that the girls would need sophisticated parenting to understand the emotional effect of their past. She testified it would be traumatic for them if they were placed with Nelson and Perkins and the parents went back to their old ways. It would be more devastating if Nelson and Perkins initially proved to be good parents but then later reverted, in part because the girls would lose the ability to trust anyone again. In sum, the achievement of a successful reunion and raising if the children were returned to their parents was remote.

It is true that both parents have taken some steps toward improving their lives, but "[t]he trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court. [Cit.]"[8]

Given the testimony of the psychologists and the social worker about the effect on the children of their parents' condition and behavior, the parents' continued incarceration and years of probation, their past behavior, and the likelihood of any significant and meaningful change, a rational trier of fact could have found by clear and convincing evidence that the deprivation was likely to continue or would not likely be remedied.[9]

2. The parents insist that the court and the Department of Human Resources failed to make an exhaustive and thorough search for placement with a suitable family member as required by OCGA § 15-11-90 (a) (1). The only candidate they mention is Perkins' brother and sister-in-law.

DFCS initially placed the children with Mr. and Mrs. Perkins, but they violated DFCS policy thereby endangering all three children. Despite this, DFCS considered placing the children there permanently, until an investigation revealed that the Perkinses had criminal histories, a pending welfare fraud investigation, and that the uncle had an alcohol problem. The uncle could give no details

---

[8] *In the Interest of J. R.*, 201 Ga. App. 199, 200 (1) (410 SE2d 458) (1991); see *In the Interest of M. N. L.*, 221 Ga. App. 123, 124 (1) (470 SE2d 753) (1996).

[9] See *In the Interest of A. W.*, 198 Ga. App. 391 (401 SE2d 560) (1991).

about his income, and the aunt did not work. They lived in a three-bedroom mobile home with their three children. The addition of three children would be problematic. The home was not approved.

Mrs. Perkins testified that she would like to have the children live with them, but in light of the evidence, and of the foster parents' desire to adopt, we find no abuse of discretion in not placing the children with these relatives.[10]

3. With regard to the efforts made to reunite the mother with the children, the court heard extensive testimony of all such attempts and even postponed its final ruling pending Perkins' expected upcoming release in order to determine whether she was capable of effective parenting. At that point the children had been in foster care for two and a half years. The guardian ad litem urged the court that the children could not tolerate any additional delay in permanency. This was consistent with the recommendations of the DFCS caseworker and the children's psychologist.

All said, the court did not abuse its discretion in terminating the appellants' parental rights.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 15, 1998.

*Banks, Stubbs & Neville, John R. Neville, Donald W. Wagner,* for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, William C. Joy, Senior Assistant Attorneys General, Kathryn C. Reeder, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Bivens, Hoffman & Fowler, Mark A. Cobb,* for appellees.

---

[10] Compare *In the Interest of M. R.*, 213 Ga. App. 460, 466-467 (3) (444 SE2d 866) (1994), overruled on other grounds, *In the Interest of C. W. S.*, 231 Ga. App. 444, 447 (3) (498 SE2d 813) (1998) (decision not to place child with relative whose ability to care for child may be limited not abuse of discretion); *In the Interest of D. T.*, 221 Ga. App. 328, 330 (2) (471 SE2d 281) (1996) (only candidate declined to accept the responsibility for custody).