A99A0485. IN THE INTEREST OF J. C., a child.
(515 SE2d 847)

JOHNSON, Chief Judge.

The biological father of J. C. appeals from a juvenile court order terminating his parental rights. He complains that the juvenile court's determination that the deprivation is likely to continue and is not likely to be remedied is not supported by clear and convincing evidence, particularly given the progress he has made. We affirm the decision of the juvenile court.

The decision to terminate parental rights involves a two-part process. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability. This determination is based on a finding that the child is deprived, the lack of proper parental care or control by the parent is the cause of the child being deprived, the cause of deprivation is likely to continue or will not likely be remedied, and the continued deprivation

will cause or is likely to cause serious harm to the child. *In the Interest of K. W.*, 233 Ga. App. 140, 141 (2) (503 SE2d 394) (1998). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, the court considers whether termination of parental rights is in the best interest of the child. Id. On appeal, we determine whether, viewing the evidence in a light most favorable to the lower court's judgment, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

The record shows that when the child was born in April 1996, she and her mother tested positive for cocaine. Two days later, the Laurens County Department of Family & Children Services ("DFACS") was granted temporary custody of J. C. The court entered an order finding the child deprived, and the child was placed in foster care.

DFACS developed a reunification plan which required J. C.'s parents to become and remain alcohol- and drug-free, establish and maintain a safe home environment for the child, attend and complete a parenting skills course, maintain contact with the child through bi-weekly visits, maintain contact with DFACS, and pay child support.

In November 1997, after conducting regular case reviews and upon the recommendation of a review panel, DFACS filed a petition to terminate the parents' rights to J. C. As grounds for termination, the petition cited the parents' failure to visit the child since April 1997, their eviction in June 1997, their separation, the failure of either parent to have an established home, their failure to maintain contact with the agency, and their absence from the last panel review meeting in August 1997.[1]

A hearing was held in March 1998. During the hearing, a caseworker testified that the parents did not maintain regular contact with DFACS and contacted DFACS only once during the year preceding the hearing. Although visitation was scheduled to occur every two weeks, and DFACS provided transportation to and from the visits, the father visited J. C. only six or seven times during the nearly two years the child was in DFACS' care. The visits lasted an hour each; the parents never asked for longer visits and sometimes ended the visits early. The caseworker present during the visits observed that the child was uncomfortable with and did not seem to know or bond with the parents. Once when the caseworker came to pick up the parents for visitation, she learned that the parents had been evicted.

---

[1] DFACS also cited grounds for terminating the mother's rights which did not directly involve the father's fitness. Because only the father appeals, we will not discuss in detail the evidence pertaining only to termination of the mother's rights.

Neither parent had notified DFACS that they had moved. There was no response to several letters sent to the parents.

The father testified that he separated from J. C.'s mother in the summer of 1997 and moved into a boarding house. He stayed there four or five months then moved into his mother's home, where he was living at the time of the hearing. He said the child could not stay with him at his mother's house and that he would need to get a place of his own before he could take custody of J. C. He admitted that although he currently was working, he could not afford to make child support payments and pay rent. The father did pay child support through garnishment of his paycheck from August 1997 until the hearing date.

The father admitted that he is an alcoholic and has been hospitalized for alcoholism and for depression. The father remarked that he was cited for "DUI" within the past year. He said that he visited the child only once in the past year. When asked why he visited her so infrequently, he replied that he did not have transportation and could not afford to visit her.

A court-appointed child advocate testified that he interviewed the father before the hearing and the father related to him that he was upset about having to pay child support. When the advocate asked the father if he would take the child back at that time, the father replied that he was living in a boarding house and did not have money to support the child.

The court terminated the father's rights based on its findings that the child was born with cocaine in her system; the parents do not have the means to support her; the child has never lived with either parent during her two years of life; the parents were never married and are separated; the father does not have a suitable home for the child; the father has not visited the child regularly; the father has a history of alcoholism and depression; the father has not complied with case plan requirements to remain alcohol-free, provide a safe home, visit the child regularly, and maintain contact with DFACS; the father has not legitimated the child; and the child is well adjusted and happy in her foster home.[2]

1. The father does not dispute that J. C. is a deprived child or that the deprivation is a result of the lack of proper parental care. See OCGA § 15-11-81 (b) (4) (A) (i), (ii). Thus, our focus is on whether the deprivation is likely to continue. See OCGA § 15-11-81 (b) (4) (A) (iii).

In determining whether conditions of deprivation are likely to

---

[2] The juvenile court also made findings specifically concerning the mother's unfitness. As noted above, these will not be discussed in the father's appeal.

continue, the court may consider the past conduct of the parent. *In the Interest of R. D. S. P.*, 230 Ga. App. 205, 207 (495 SE2d 867) (1998). Here, there was evidence of both past and present unfitness.

The father's failure to visit the child regularly, to stay in contact with DFACS, and to secure a safe home environment for the child in the two years she spent in the custody of DFACS supports a finding that the deprivation would likely continue. This is particularly true since the father was not, at the time of the hearing, ready or able to provide for J. C.'s basic needs. See *In the Interest of R. L. M.*, 221 Ga. App. 343, 344 (1) (471 SE2d 245) (1996). The evidence provides clear and convincing proof that if J. C. was returned to her father's custody, the deprivation was likely to continue.

The father claims that he has made some progress and that his progress is evidence "justifying a belief that he can rehabilitate himself." He points out that he completed parenting classes, attended some of the case reviews, paid child support, and has not been significantly involved in drug and alcohol use. These efforts, while commendable, are insufficient to invalidate the juvenile court's finding of clear and convincing evidence demonstrating that the deprivation was likely to continue. See generally *In the Interest of K. H.*, 229 Ga. App. 307, 310 (2) (494 SE2d 69) (1997); *In the Interest of H. G.*, 195 Ga. App. 642, 643 (394 SE2d 557) (1990). It is the juvenile court, not the appellate court, which must determine whether a parent's conduct warrants hope of rehabilitation. *In the Interest of A. M. N.*, 234 Ga. App. 365, 370 (1) (506 SE2d 693) (1998). A plea for more time to improve is without force to overcome the proof of unrelieved detriment already suffered by the child for her entire life. *In the Interest of N. C.*, 228 Ga. App. 875, 877 (492 SE2d 895) (1997). "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of S. J. C.*, 234 Ga. App. 491, 494 (1) (507 SE2d 226) (1998).

2. We note that the record also supports a finding that termination of the father's parental rights would be in J. C.'s best interest. J. C. has been with the same foster parents since she was two days old, is doing very well, and is happy and "carefree." When visiting the father, the child seems unhappy, uncomfortable, is squeamish, and whines a lot. She apparently has not bonded with her biological parents. In considering the best interest of the child, the juvenile court may consider her need for stability and the harmful effects of prolonged foster care. See *In the Interest of D. A. P.*, 234 Ga. App. 257, 260 (2) (506 SE2d 438) (1998). The juvenile court was authorized to conclude that deprivation was not likely to be remedied and that it was in the child's best interest that the father's rights be terminated. Id.

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 7, 1999.

*Carlton K. Nelson III,* for appellant.
*Thurbert E. Baker, Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Thompson, Thompson & Hilbun, Samuel A. Hilbun, William L. Tribble,* for appellee.