A99A2491. IN THE INTEREST OF D. B. et al., children.
(531 SE2d 172)

SMITH, Judge.

L. R.'s parental rights were terminated as to all four of her biological children. In this appeal, L. R. contests the termination of her rights only as to two of the four children, D. B. and D. B. (same initials for both), twin boys who are now nearly six and one-half years old. In her sole enumeration of error, L. R. contends the trial court erred in finding clear and convincing evidence that the cause of these children's deprivation was likely to continue. We disagree and affirm the order terminating her parental rights.

In considering a challenge to the sufficiency of the evidence in a parental rights termination case, we must review the evidence in the light most favorable to the appellee and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. *In the Interest of A. C.,* 230 Ga. App. 395, 396 (1) (496 SE2d 752) (1998). We do not weigh the evidence or determine the credibility of the witnesses but defer to the juvenile court's factfinding unless the evidence fails to satisfy the appellate standard of review. *In the Interest of L. H.,* 236 Ga. App. 132, 133 (1) (511 SE2d 253) (1999); *In the Interest of T. M. R.,* 208 Ga. App. 499, 500 (430 SE2d 865) (1993).

OCGA § 15-11-81 (a) delineates a two-step procedure to be employed in parental termination of rights cases. *In the Interest of B. L. S.,* 239 Ga. App. 771, 774 (521 SE2d 906) (1999). First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation;

(3) the cause of the deprivation is likely to continue; and (4) the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i)-(iv); *In the Interest of B. L. S.*, supra. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-81 (a); *In the Interest of L. H.*, supra.

In this case, L. R. contests only the third factor, whether the record supports a finding that the cause of deprivation is likely to continue. In so doing, L. R. apparently concedes that the other factors were satisfactorily demonstrated. See *In the Interest of E. C.*, 225 Ga. App. 12, 15 (482 SE2d 522) (1997).

When viewed in the light most favorable to the juvenile court's decision, the evidence showed that when the twins were just over a year old in December 1994, the juvenile court ordered placement of the children into the temporary custody of the Department of Family & Children Services because the parents had unstable living arrangements and erratic employment. Supposedly to seek a job in another city, L. R. left the four children for a week with their alcoholic father and without food, electricity, or heat. Unable to care for the children and not knowing when L. R. might return, the father contacted police to assume custody.[1] All four children were taken into emergency protective custody, and DFACS began caring for them.

As of the time of the termination hearing, L. R. had repeatedly failed to keep DFACS apprised of her residential and employment addresses. Three certified letters addressed to her were returned to DFACS. She missed ten scheduled appointments with her caseworker. Despite L. R.'s promises to obtain a suitable residence for the children, she had lived at approximately 18 different places since DFACS obtained custody of the children. She rarely contacted her caseworker and missed 19 of 55 scheduled bimonthly visitations with the children.

Although the goals of the case plan remained constant, L. R. failed to obtain stable housing, steady employment, and a consistent supply of food. While the case plan required L. R. to undergo alcohol and drug evaluation and to forward the results of testing to DFACS, she did not do so. Despite explicit requirements outlined in the case plan, L. R. did not provide financial support for the children or visit them regularly. L. R. never sent letters or cards to them and called

---

[1] Apparently, three of the children share the same biological father, but the father of the fourth child remained unknown as of the time of the hearing.

the foster mother only once.

At the termination hearing, L. R. admitted she could not presently care for the children. Although she claimed she had been employed for four months, her earnings statement reflected only about four weeks of employment. L. R. voiced a hope that she could be sufficiently stable within four months to care for the children and conceded that she presently lacked a suitable residence for them. L. R. testified that she planned to rely upon the children's Social Security benefits and other governmental aid to provide rent, food, day care, and clothing for the children. Her counsel conceded that L. R. had not been "terribly responsible."

In a carefully crafted and highly detailed order, the juvenile court found:

> [N]either the mother nor the father have a residence suitable for the children. For six (6) plus years preceding December, 1994, the mother lived with the father in a conjugal relationship. During that time she was not employed. The father provided her support. At that time she had no vocational skills and virtually no independent living skills. After eighteen (18) months [of] prodding, scrutiny, and offers of assistance, there has been no significant change in her ability to live independently.[2]

The court observed that L. R. "now has no stated plan for herself and the children other than the vague, indefinite goal of having a residence large enough for herself and her children." After expressly finding all four statutory factors were fully satisfied, the court then determined that termination of the mother's parental rights would be in the best interests of the children. "Judging the credibility of [the mother's] good intentions was a task for the juvenile court. The decision as to [the children's] future must rest on more than positive promises which are contrary to negative past fact." (Citations and punctuation omitted.) *In the Interest of C. D. P.*, 238 Ga. App. 393, 395 (519 SE2d 37) (1999). Further, the past conduct of a parent properly may be considered by the court in determining whether conditions of deprivation are likely to continue. *In the Interest of J. M. C.*,

---

[2] The termination hearing occurred on August 20, 1996. The date of the termination order at issue is August 8, 1997. But the appeal was not docketed in this court until November 1999. Most of the delay appears to have been due to the late filing of the transcript from the hearing in 1996. Inexplicably, this transcript was not filed until July 23, 1999. The passage of more than three years before docketing is unconscionable since the future of these twins has been and continues to be at stake. It is highly probable that much of the childhood of these twins has irretrievably evaporated in "foster care drift" during the interim. *In the Interest of A. M. N.*, 234 Ga. App. 365, 368 (506 SE2d 693) (1998).

201 Ga. App. 173, 174 (410 SE2d 368) (1991). Here, no evidence indicated that L. R. was capable of properly parenting the twins or that her difficulties with parenting were likely to end. Given the uncontradicted evidence that L. R. had not been able to hold a job consistently, had not been able to procure suitable housing, and had not maintained consistent contact with the children, the evidence clearly supports the juvenile court's determination that the cause of the deprivation was likely to continue. *In the Interest of C. N.*, 231 Ga. App. 639, 641 (2) (500 SE2d 400) (1998).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 14, 2000.

*Thomas J. Killeen,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Garcia & Powell, Tony D. Coy,* for appellee.