545 S.E.2d 1 (2001)
247 Ga. App. 569
In the Interest of D.S. et al., children.
No. A00A2530.
Court of Appeals of Georgia.
January 16, 2001.
*2 James E. Wilbanks, Dalton, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Waycaster, Morris, Johnson & Dean, Jeffrey J. Dean, Dalton, for appellee.
MIKELL, Judge.
Appellant, the natural mother of D.S. and R.S., appeals from the termination of her parental rights. She challenges the sufficiency of the evidence. For the reasons set forth, we affirm the termination order of the juvenile court.
In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, we review the evidence in the light most favorable to the judgment of the juvenile court and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. In the Interest of A.D., 243 Ga.App. 727, 728, 534 S.E.2d 457 (2000); In the Interest of D.B., 242 Ga.App. 763, 531 S.E.2d 172 (2000).
So viewed, the record shows that D.S. and R.S. were removed from appellant's custody for the first time in 1997, and that they were returned to her on the condition that the Murray County Department of Family & Children Services (the "Department") monitor the family's situation. The Department regained legal custody of the children in August 1998, and they have not been in their mother's custody since that time. The children are currently living with foster parents. The Department developed a reunification plan for appellant in which she was required to meet the following goals: pay child support in the amount of $10 per week per child; attend mental health counseling and take all prescribed medications; develop her parenting skills by attending classes and viewing certain videos; obtain steady employment; maintain a safe and stable home; and visit the children regularly.
On August 9, 1999, the Department filed a petition to terminate the parental rights of appellant and the children's father. Following a hearing, the juvenile court entered an order terminating the father's rights and granting appellant a short amount of additional time to meet her goals of reunification.
The Department filed another petition for termination of appellant's parental rights on January 17, 2000, due to her failure to meet the required goals. The court conducted a hearing on April 25, 2000, when it heard witness testimony and took judicial notice of all of its prior orders in the case and of the reports of the judicial citizens review panel.
At the hearing, Ruby Slack, the Department caseworker assigned to appellant's case, testified that the Department recommended the termination of appellant's parental rights because she had not complied with her reunification goals and because the children would be adversely affected if they remained in their current situation. Slack further testified that appellant had made only one child support payment of $20 in the 12-month period prior to the termination of her parental rights, despite the fact that she sold a home for $17,000 and was earning $10 per *3 hour; that appellant did not attend required mental health counseling and had not taken her prescribed medication for treatment of an attention deficit hyperactivity disorder; that she failed to provide documentation of her enrollment in her employer's health insurance plan; that she demonstrated poor financial management skills; and that she had been employed since October 1999, but not consistently in the same job.
According to Slack, appellant's residence was not a suitable home for the children. Slack testified that when she visited the residence in January 2000, she observed bare mattresses on the floor, an odor of raw sewage, and beer and liquor bottles, despite appellant's prior history of alcohol abuse. Additionally, the refrigerator and one of two toilets in the residence were not working properly.
Slack acknowledged that appellant had attended the required parenting classes and had viewed the videos; however, she raised concerns about appellant's parenting skills. Specifically, Slack testified that appellant did not demonstrate nurturing behavior during her visits with the children every two weeks, and that she allowed the children, ages four and six, to use public restrooms unattended. Slack reported that appellant had not bonded with the children, and that the children generally exhibited little emotion at the end of their visits with their mother.
D.S. and R.S. were placed with their maternal grandmother from October 1999 to February 2000. Slack testified that at the time of the hearing in April, the children had been in the same foster placement for over two months, and that their foster parents wished to adopt them. According to Slack, the children were doing very well and seemed happy in their current placement.
Appellant's mother, Dianne Hayes, testified at the hearing that when D.S. and R.S. were in her care, appellant visited them sporadically and either talked on the telephone or watched television during the visits. According to Hayes, appellant "didn't spend good quality time hugging, talking, reading to them, doing things that would have been good for the kids and good to have those times together.... She just doesn't have that ability normally." Hayes further testified that her daughter had not taken her medication regularly during the six months prior to the hearing and opined that if the children were returned to appellant, they would not be safe in her care. Hayes spoke enthusiastically about the children's current placement with their foster parents and testified that R.S. had made "unbelievable" progress in speech therapy, and that both children had improved socially and academically.
Sandra Ellis, the paternal grandmother of two of appellant's other children, Cal. E. and Car. E., testified that she had continuously had custody of her grandchildren for over seven years. Ellis testified that appellant rarely visited Cal. E. and Car. E.; that she expressed little interest in them; and that she was not capable of caring for young children.
At the hearing, appellant admitted that the juvenile court had already given her an opportunity to comply with the reunification goals, and that she understood that her failure to comply could result in the termination of her parental rights. The guardian ad litem recommended that the court terminate appellant's parental rights. Based on the evidence and the recommendations of the Department and the guardian ad litem, the juvenile court entered an order terminating appellant's parental rights on May 2, 2000.
The statutory criteria for the termination of parental rights are the two-step procedure provided in OCGA § 15-11-94(a).[1] The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv). If these four factors are satisfied, the court must then determine whether termination of parental rights is in the best interest of the *4 child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94(a); In the Interest of D.B., supra, 242 Ga.App. at 763-764, 531 S.E.2d 172; In the Interest of A.M.V., 222 Ga.App. 528, 529, 474 S.E.2d 723 (1996).
With regard to the first step, we conclude that a rational trier of fact could have found that the four factors demonstrating appellant's parental misconduct or inability were satisfied by clear and convincing evidence. First, D.S and R.S. were taken into custody by the Department in August 1998 based on a determination of deprivation. Appellant failed to appeal the initial deprivation order. "Therefore, appellant is bound by this finding of deprivation and the first factor is satisfied." In the Interest of E.C., 225 Ga.App. 12, 15, 482 S.E.2d 522 (1997). See also In the Interest of J.M.D., 221 Ga. App. 556, 558, 472 S.E.2d 123 (1996). Furthermore, even absent the prior determination of deprivation, the evidence summarized above provides clear and convincing evidence that the children were deprived.
The second factor, that lack of proper parental care or control caused the deprivation, has also been satisfied. OCGA § 15-11-94(b)(4)(C) provides that when the children are not in the custody of the natural parent, the court may consider whether the parent without justifiable cause has failed significantly for a period of one year or longer to develop and maintain a parental bond with the child, to provide for the care and support of the child, and to comply with a court-ordered reunification plan. The evidence summarized above clearly supports a finding that appellant has failed to develop a bond with the children, to support them, or to comply with the goals of her reunification plan. Thus, the juvenile court properly found that lack of proper parental care or control caused the children's deprivation.
Likewise, the third factor, whether the cause of the deprivation is likely to continue, is satisfied by the record. OCGA § 15-11-94(b)(4)(A)(iii). The court may consider past conduct of the parent in making its determination that such conditions of deprivation are likely to continue. In the Interest of C.W.D., 232 Ga.App. 200, 204, 501 S.E.2d 232 (1998). "Such an inference is appropriate, since the juvenile court is not required to reunite [D.S. and R.S.] with appellant in order to obtain current evidence of deprivation or neglect." In the Interest of E.C., 225 Ga.App. at 16, 482 S.E.2d 522. Appellant's refusal to obtain mental health treatment, lack of interest in her children, lack of basic parenting skills, inability to bond with her children, and failure to comply with her reunification goals demonstrate that the same pattern of deprivation would likely continue if the D.S. and R.S. were reunited with their mother. In the Interest of J.M.S.M., 240 Ga.App. 294, 296, 523 S.E.2d 357 (1999).
That same evidence supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the children. In the Interest of K.L., 234 Ga.App. 719, 722, 507 S.E.2d 542 (1998); OCGA § 15-11-94(b)(4)(A)(iv). Thus, the fourth factor in determining parental misconduct or inability has been satisfied.
Finally, the court's conclusion that termination of parental rights is in the best interests of the children is supported by clear and convincing evidence. OCGA § 15-11-94(a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) In the Interest of C.N.H., 238 Ga.App. 50, 53-54(2), 517 S.E.2d 589 (1999). The ample evidence of appellant's parental inability coupled with evidence that D.S. and R.S. are thriving in their foster home supports the determination that termination of appellant's parental rights is in the best interests of the children.
Judgment affirmed.
POPE, P.J., and MILLER, J., concur.
NOTES
[1] The procedure was previously codified at OCGA § 15-11-81(a).