548 S.E.2d 454 (2001)
249 Ga. App. 457
In the Interest of J.M.D. et al., children.
No. A01A0319.
Court of Appeals of Georgia.
May 2, 2001.
Saunders P. Jones IV, Marietta, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., John C. Shelton, Atlanta, for appellee.
*455 PHIPPS, Judge.
The mother of J.M.D. and J.A.D. appeals the juvenile court's order terminating her parental rights. She argues that the evidence was insufficient to show that the children's deprivation likely would continue if her parental rights were not terminated. We disagree and affirm.
Before terminating parental rights, a juvenile court must find that there is present clear and convincing evidence of parental misconduct or inability and that termination would be in the child's best interest.[1] Parental misconduct or inability is present if (1) the child is deprived; (2) the deprivation is caused by the parent's lack of proper parental care or control; (3) the deprivation is likely to continue or will not be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[2]
One factor relevant to determining whether a child is without proper parental care or control is whether the parent has "[a] medically verifiable deficiency of ... physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child."[3] If the child does not live with the parent, the juvenile court also shall consider, among other things, whether the parent without justifiable cause has failed for one year or more to develop and maintain a meaningful, supportive parental bond with the child.[4]
We review the juvenile court's decision to determine whether, viewing the evidence in the light most favorable to the decision, any rational trier of fact could have found by clear and convincing evidence that the parent's right to custody should be terminated.[5]
So viewed, the record shows that the Department of Family & Children Services (DFACS) took custody of J.M.D. and J.A.D. in 1993 because their mother was "having a mental breakdown," had nowhere to live, and had left the children on a street corner. In October 1993, the juvenile court found that the children, then age five and three, were deprived and granted temporary custody of them to DFACS. The court also ordered the mother to receive a psychological evaluation, undergo counseling, and complete a parenting class. The mother stipulated to DFACS's custody petition and did not appeal the court's order.
In two orders dated May 1995 and March 1997, the juvenile court extended DFACS's custody of the children. The court found that the conditions of the children's deprivation had not been alleviated, that the mother had a history of mental problems and was incapable of parenting, that she had failed to obtain treatment for her problems, that she had no home of her own, and that she had failed to provide support for the children. The mother did not appeal either order.
After a hearing in September 1998, the juvenile court entered a third order extending its original custody order and finding that the mother had made no progress in remedying the causes of her children's deprivation. The order noted that the mother was not present at the hearing, that her whereabouts were unknown, and that she had failed to maintain regular contact with DFACS. The mother did not appeal this order.
After a hearing in April 1999, the juvenile court entered a fourth order extending custody. Although the court found that "the mother now has a home and a job," it also found that she had failed to provide verification that she was receiving treatment for her mental health condition, that she had made no effort to be reunited with her children, that she had failed to visit or communicate with them on a regular basis, that she had not contacted or cooperated with DFACS, and that she had "abandoned the children." *456 The mother did not attend the hearing or appeal the order.
In January 2000, DFACS filed a petition to terminate the mother's parental rights. In July 2000, the juvenile court heard the petition.
Dr. Hilary Slavin, a clinical psychologist, testified that he had evaluated the mother in 1993, 1995, 1999, and May 2000. He concluded that she suffered from a personality disorder with antisocial features. According to Dr. Slavin, such an individual
has long-standing chronic coping problems, does not learn well from experience, does not learn well from mistakes from the past,... can become overwhelmed by stress[,]... has limited frustration tolerance, poor impulse control, ... tendency to be oppositional. Has trouble forming close relationships with other people. Behavior may be unpredictable and erratic and such.
He testified that someone with this diagnosis would not improve without receiving weekly psychotherapy over a period of years.
Dr. Slavin stated that during his May 2000 evaluation of the mother, she told him she had not received any treatment during the previous year and did not "feel as if she really had any problems." He testified that there had been little change in the mother's personality disorder since 1993 and that she had shown no capacity to improve her parenting skills. Due to her lack of motivation in pursuing treatment, Dr. Slavin opined that her prognosis was "quite guarded."
Dr. Slavin also testified that he had evaluated the children and that they suffered from depression that was related, in part, to the mother's inability to care for them. Dr. Kenneth Parker, a psychologist who treated the children, testified that the children's behavioral problems were exacerbated by visits with the mother.
Irene Neely, the DFACS caseworker assigned to the family, testified that after the mother got a job and an apartment in 1999, DFACS tried to increase her visitations with the children. The children were scheduled to spend their Thanksgiving break with their mother, but, according to Neely, she failed to plan for the children's arrival, said that she did not want to keep them for five days, and complained that DFACS had "dumped them on her." After the visit, the children's behavior deteriorated, and the mother did not try to arrange another visit for approximately three months. Neely also testified that she had asked the mother to shift her work schedule so that she could be home with her children in the evenings, but the mother had not done so. In addition, Neely stated that the mother had not paid any court-ordered child support since 1997.
With respect to the mother's personality disorder, Neely testified:
I suggested she needed to get re-involved with mental health counseling. And her response to me was that they told her she didn't have to go anymore. And my suggestion to her was that she, you know, really did need to go because that was part of the plan that was with the panel review and had been ordered by the court, and that she really did need to be involved in mental health counseling.
Neely testified that she was aware of no change in the mother's mental health condition during the seven years the children had been in DFACS's custody. Nevertheless, the mother told Neely that she had no problems.
The mother's sister, with whom the children were placed for nearly five years, testified that she solicited the mother's help in caring for the children, but the mother "just couldn't get herself together to pitch in." The mother never initiated any contact with her children, but the sister tried to arrange visitations. Once, the sister brought the children to their mother for the weekend, but the mother apparently "got overwhelmed" and took the children to DFACS. According to her sister, the mother is not capable of caring for the children without substantial help.
Finally, the children's current foster mother testified that they are doing well in her home and that she would adopt them if given the opportunity.
The mother neither testified nor presented any witnesses on her behalf.
*457 On appeal, the mother argues that the evidence failed to show any continuing parental inability. She points out that she has had a job and an apartment for the past three years. However, there was abundant evidence that she also has a medically verifiable mental health problem that makes her unable to parent adequately and that requires regular, long-term treatment.[6] According to Dr. Slavin, the mother's condition will not improve without treatment, yet she discontinued her treatment more than a year before the termination hearing and denied having any problem. Although she claims that her mental health counselor told her she did not need regular treatment, the fact remains that regular treatment had been recommended by the court-appointed psychologist, requested by the DFACS caseworker, and ordered by the court.
Moreover, the evidence failed to show any improvement in her parenting skills during the seven years that her children have been in the custody of DFACS. For the five years that the children lived with her sister, the mother failed to help with their care, did not initiate visits, and returned the children to DFACS during a weekend visit because she became overwhelmed. More recently, the mother has failed to prepare for visits and has scheduled them only erratically. In addition, she has not paid court-ordered child support for more than three years. In the words of her caseworker, the mother has taken no steps "to act like she really wants to provide for these children."
Taking steps toward stability is not sufficient to avoid termination of parental rights if there is clear and convincing evidence of continuing parental inability.[7] As there was such evidence here, the juvenile court was authorized to conclude that the children's deprivation likely would continue if they were reunited with their mother, and that termination of her parental rights was in their best interest.
Judgment affirmed.
SMITH, P.J., and BARNES, J., concur.
NOTES
[1] In the Interest of J.M.M., 244 Ga.App. 171, 534 S.E.2d 892 (2000).
[2] Id.; OCGA § 15-11-94(b)(4)(A).
[3] OCGA § 15-11-94(b)(4)(B)(i).
[4] OCGA § 15-11-94(b)(4)(C)(i).
[5] In the Interest of C.R., 245 Ga.App. 697, 538 S.E.2d 776 (2000).
[6] See In the Interest of J.W. H., 245 Ga.App. 468, 472-473(5)(a), 538 S.E.2d 112 (2000) (testimony that father's debilitating mental disorder was likely to continue supported finding that cause of child's deprivation likely would continue).
[7] See In the Interest of J.S.G., 242 Ga.App. 387, 389(1), 529 S.E.2d 141 (2000) (termination was justified even though mother "made some progress on [the] goals" of reunification case plan because evidence showed she had personality disorder that rendered her unable to care properly for her children).