A02A1574. IN THE INTEREST OF D. B. et al., children.
(572 SE2d 9)

MIKELL, Judge.

The mother of D. B., C. T., and W. J. appeals the juvenile court's order terminating her parental rights, contending that the evidence is insufficient to support the court's decision. We disagree and affirm.

The decision to terminate parental rights is a two-step process. First, the juvenile court must determine whether there is present clear and convincing evidence of parental misconduct or inability.[1] This determination is made by finding that (1) the children are deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children.[2] If these four factors exist, then the court must determine whether termination of parental rights is in the best interests of the children, considering their physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[3] The standard of review on appeal from an order terminating parental rights is whether, viewing the evidence in a light most favorable to the appellee, a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.[4] We must defer to the lower court's factfinding and affirm unless the appellate standard of review is not met.[5]

1. Viewing the evidence most favorably to the appellee, the Georgia Department of Human Resources, there was ample clear and convincing evidence of the four factors required to establish parental misconduct or inability.

(a) As to the first factor, the mother never appealed the deprivation order entered on October 2, 1998. Thus, she cannot challenge the finding that the children are deprived.[6]

---

[1] OCGA § 15-11-94 (a).

[2] OCGA § 15-11-94 (b) (4) (A). See *In the Interest of B. W.,* 254 Ga. App. 63, 64 (1) (561 SE2d 199) (2002).

[3] OCGA § 15-11-94 (a). See *In the Interest of V. M. T.,* 243 Ga. App. 732, 736 (3) (534 SE2d 452) (2000).

[4] *In the Interest of L. M.,* 219 Ga. App. 746, 748 (2) (466 SE2d 887) (1995).

[5] *In the Interest of C. J. V.,* 236 Ga. App. 770, 771 (513 SE2d 513) (1999).

[6] See id. at 774.

(b) Second, in determining that lack of proper parental care or control caused the deprivation, the juvenile court properly considered "evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature" and a "medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child."[7]

The record is replete with evidence that the children suffered physical abuse while in their mother's custody. The presence of unexplained, severe bruises on two-year-old D. B. and eleven-month-old W. J. prompted the Floyd County Department of Family & Children Services (the "Department") to remove all three children from the mother's custody in September 1998. The mother admitted that she injured D. B.'s ankle and foot and that she did not seek medical attention for him because she knew the authorities would investigate. The mother also admitted that she slapped D. B. and C. T. on the face, used a hickory stick and a belt to punish the children, and bruised them with a paddle. During a home visit, another caseworker observed that D. B. had deep, infected cuts through all of his fingernails. Once W. J. was struck in the eye with a socket wrench, requiring emergency room treatment to repair the cut. W. J.'s foster mother testified that the child had fifteen bite marks on his arms and back when he was returned to her after a four-day stay with the mother in 2000. Finally, expert testimony was presented that five-year-old C. T. was sexually abused by the mother's brother.

The mother failed a polygraph test concerning abuse of W. J. She was charged with two counts of cruelty to children and ultimately pleaded nolo contendere to two counts of simple battery.

The mother claimed that the children caused each other's injuries. For example, she told a caseworker that the children bit each other. "Even if the mother did not cause [some of] the injuries, the juvenile court was authorized to conclude that the injuries were attributable to her inability to protect her [children], which also constitutes lack of proper parental care and control."[8] In any event, an obvious connection exists between the nolo contendere plea and harm inflicted upon the children.[9]

In addition, the juvenile court was presented with evidence of the mother's medically verifiable mental deficiency, which rendered

---

[7] OCGA § 15-11-94 (b) (4) (B) (i), (iv).

[8] (Footnote omitted.) *V. M. T.*, supra.

[9] See *In the Interest of I. S.*, 238 Ga. App. 304, 308 (520 SE2d 470) (1999) (mother's guilty plea to cruelty to children showed that her conduct caused deprivation); *In the Interest of R. M.*, 232 Ga. App. 727, 728 (503 SE2d 635) (1998) ("obvious link" between physical abuse of children and parents' convictions of cruelty to children and aggravated battery).

her unable to provide adequately for the children.[10] Dr. Robert Connell, the mother's treating psychologist, who testified by deposition, diagnosed her with major depressive disorder and passive/aggressive tendencies. Dr. Richard Hark, the psychologist who evaluated her at the Department's request, deposed that she suffered from some depression, along with a personality disorder having passive/aggressive and hysterical features.

Dr. Connell deposed that the mother refused to take her antidepressant medication regularly and that she admitted lying to the Department about obtaining employment for herself and medical treatment for the children. As to her ability to care for the children he stated: "I sure as heck don't believe that she can meet the needs of the three children on a day in and day out basis." Dr. Hark's opinion of the mother's parenting abilities was similarly dismal: "[S]he doesn't have the ability to take care of these children. . . . I don't think she even has the true motivation." Accordingly, clear and convincing evidence supports the finding that the mother's mental deficiency contributed to the children's deprivation.[11]

(c) As to the third and fourth factors, whether the cause of the deprivation is likely to continue and is likely to cause serious harm to the children, we hold that clear and convincing evidence supports the juvenile court's findings. The court was permitted to consider the mother's past conduct in determining that the deprivation would likely continue.[12] The court was not required to return the children to the mother's custody to suffer further physical abuse.[13]

2. Finally, the juvenile court was authorized to conclude that the termination of the mother's parental rights was in the children's best interests. In making this determination, the court could consider the same factors that supported its finding of parental inability.[14] Based on the evidence discussed above, any rational trier of fact could have concluded that termination of parental rights was in the best interests of the children.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 19, 2002.

---

[10] OCGA § 15-11-94 (b) (4) (B) (i).

[11] See *In the Interest of J. M. D.*, 249 Ga. App. 457, 460 (548 SE2d 454) (2001) (untreated mental condition supported conclusion that children's deprivation likely would continue); *In the Interest of A. M. R.*, 230 Ga. App. 133, 135 (1) (a) (495 SE2d 615) (1998) (mental condition and erratic behavior showed parental inability).

[12] *In the Interest of M. V.*, 253 Ga. App. 669, 672 (560 SE2d 125) (2002).

[13] Id.

[14] Id.

*William H. Newton III*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Holly A. Bradfield*, for appellee.