578 S.E.2d 190 (2003)
259 Ga. App. 534
In the Interest of M.L. et al., children.
No. A02A1682.
Court of Appeals of Georgia.
February 11, 2003.
*191 Jamie L. Smith, Marietta, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., John C. Shelton, Atlanta, for appellee.
MILLER, Judge.
The mother of minor children M.L., F.L., and M.L. appeals from the juvenile court's order terminating her parental rights with respect to these children. On appeal she contends that the State did not show by clear and convincing evidence that the termination of her parental rights was warranted. We discern no error and affirm.
Our responsibility as an appellate court is well established:
Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.
(Citations omitted.) In the Interest of K.D.S., 237 Ga.App. 865(1), 517 S.E.2d 102 (1999); see OCGA § 15-11-94(a), (b)(4)(A).
1. Parental Misconduct or Inability. Construing the evidence in the light most favorable to the juvenile court's findings, we will address each of the aforementioned factors below.
(a) Deprivation. The evidence reveals that in November 1999, the juvenile court found by clear and convincing evidence that ten of appellant's children were deprived and ordered that the children be placed in the temporary legal custody of the Department of Human Resources. In subsequent orders dated October 31, 2000, and October 5, 2001, the juvenile court found that the children continued to be deprived. As none of these prior orders were appealed, the mother was bound by this finding for purposes of the termination hearing involving the three children at issue. See In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001).
(b) Lack of Parental Care or Control. The prior court orders that determined that the children were deprived also stated that the deprivation occurred as a result of the children "being without proper parental care and supervision." Thus, the mother was also bound by this court finding for purposes of the termination hearing. R.G., supra, 249 Ga.App. at 93, 547 S.E.2d 729.
Moreover, the evidence revealed that the mother had a history of alcohol abuse and, despite being ordered to comply with an alcohol treatment program, failed to fully comply with her treatment. The mother's teenage son (not subject to this action) testified that the mother continued to drink alcohol and that she was incapable of being around the family when she drank. The son also testified that the mother had brandished a knife when arguing with him (causing him to pick up a crate to defend himself) and that this incident with the knife was not the only physical confrontation between the two, as such confrontations were likely to occur when the mother had been drinking. The oldest child at issue, M.L., had been diagnosed with fetal alcohol syndrome and had special needs. M.L. also had such severe ringworm at the time that she came into State custody that it could not be cured. The mother also admitted to drinking while she was pregnant with the youngest child at issue, also bearing the initials M.L.
*192 She also did not visit her children on a consistent basis, nor did she offer financial support for them when she received a $21,000 cash settlement in 1998. The mother's last visit with the oldest child, M.L., was in October 2001, and her last visit to F.L. and the younger M.L. was in July 2001. Since the time the children were taken into custody with the Department of Human Resources, the mother has not worked. The mother admitted that she did not know anything about M.L.'s special needs and had not spent sufficient time with F.L. and the younger M.L. to develop any sort of parental bond with them. She had only spent four or five hours with the younger M.L. since the child had been placed into foster care in 1999. The only children who did not have significant behavioral problems were the ones who had spent the most time away from the mother's home in State custody.
Expert testimony also established that the mother had mental health deficiencies that rendered her incapable of providing adequately for her children. See OCGA § 15-11-94(b)(4)(B)(i). A clinical psychologist who had conducted a psychological evaluation of the mother testified that the mother suffered from borderline intellectual functioning and mixed personality disorder and that these conditions were likely to continue. The mother was not likely to be receptive to long-term treatment of her personality disorder, as she tended to blame others for her problems. The psychologist also testified that the mother was prone to unpredictable behavior and poor judgment, and that she was probably unable to handle the return of her children, as she was unable to manage the care of even three of her eleven children at one time.
Accordingly, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper parental care or control caused the children to be deprived. See OCGA § 15-11-94(b)(4)(C)(i)(iii).
(c) Lack of Care or Control Likely to Continue. "Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their parent[ ]." (Citation omitted.) In the Interest of A.A., 252 Ga.App. 167, 172(2)(c), 555 S.E.2d 827 (2001). Here the mother's history of continued alcohol abuse, violence, and failure to take an active role in her children's lives while they were in State custody, along with the other evidence detailed above, authorized the juvenile court's finding that the lack of proper parental care or control was likely to continue.
Even in light of some evidence that the mother had taken some steps toward reforming her life, such improvements are not conclusive of parental fitness in light of her prior history. See In the Interest of A.G., 253 Ga.App. 88, 90-91(1)(c), 558 S.E.2d 62 (2001). "[T]he juvenile court was authorized to infer from the evidence of past conduct that the improvements in the mother's situation were not sufficient to justify maintaining the children in foster care limbo in hopes that the mother could achieve stability and provide an adequate home for her children." (Footnote omitted.) Id. at 91(1)(c), 558 S.E.2d 62.
(d) Serious Harm to the Children. The juvenile court was authorized to find from the same evidence detailed above that the deprivation was likely to cause serious physical, mental, emotional, or moral harm to the children. See, e.g., In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(d), 527 S.E.2d 614 (2000). Indeed, the mother's chronic drinking had already led to mental and behavioral deficiencies in one of her children, and the mother even admitted to drinking when pregnant with the younger M.L. The mother's continued drinking and propensity towards violence continued to create problems in her home. Expert testimony further established that the mother's mental deficiencies, which contributed to her inability to properly parent her children, were likely to lead to additional problems if the children at issue were returned.
Thus, we conclude that the juvenile court properly found clear and convincing evidence of parental misconduct or inability.
2. Best Interests of the Children. When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of *193 parental rights is in the best interests of the children, in light of the physical, mental, emotional, and moral condition and needs of the children, including the need for a secure and stable home. OCGA § 15-11-94(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) In the Interest of J.B.A., 230 Ga.App. 181, 185(2), 495 S.E.2d 636 (1998).
Since a rational trier of fact could have found (1) clear and convincing evidence of parental misconduct or inability and (2) that termination of parental rights was in the best interests of the children, the juvenile court did not err in terminating the mother's parental rights to the children.
Judgment affirmed.
JOHNSON, P.J., and BLACKBURN, P.J., concur.