A04A1509. IN THE INTEREST OF B. B., a child.
(603 SE2d 333)

JOHNSON, Presiding Judge.

This is an appeal from an order of the Juvenile Court of Bartow County terminating the parental rights of Kathy Brewton, the mother of B. B. This appeal is the fourth appeal Brewton has filed in this Court.[1] In the present appeal, Brewton alleges the trial court erred in (1) considering her testimony after she had been declared incompetent to represent herself, (2) refusing to allow Brewton to proceed pro se at trial and on appeal, and (3) terminating her parental rights because the Department failed to present clear and convincing evidence to support the termination. We find no error and affirm the juvenile court's order terminating Brewton's parental rights.

1. Brewton's first enumeration of error — that the juvenile court erred in considering her testimony in making its deprivation determination — was specifically rejected by this Court in her appeal of the custody extension order.[2] In that decision, we found that "[t]he crux of the juvenile court's inquiry was the mother's competence as a parent. It seems illogical to preclude a trial court from considering the mother's testimony for this purpose."[3] The juvenile court was not required to disregard Brewton's testimony notwithstanding her alleged incompetence.

2. In her second enumeration of error, Brewton contends that she competently, knowingly, and voluntarily waived her right to counsel, and thus the juvenile court erred in denying her request for self-representation. This Court explicitly rejected this argument in Brewton's appeal of the custody extension order.[4] Specifically, we upheld the trial court's determination that Brewton was unable to make a knowing and voluntary waiver of her right to counsel.[5]

The record shows that Brewton has multiple mental disorders, including delusional disorder, psychotic disorder, and depression. In addition, an expert testified that Brewton confused fantasy with reality, was unable to make rational judgments, was incapable of

---

[1] In Court of Appeals Case No. A03A1119, Brewton appealed the deprivation order. We remanded the case to the juvenile court to determine whether Brewton was mentally competent to represent herself on appeal. In *In the Interest of B. B.*, 267 Ga. App. 360 (599 SE2d 304) (2004), we affirmed the juvenile court's order extending custody of B. B. in the Department of Family and Children Services, holding that the lower court properly considered Brewton's testimony in determining that B. B. was deprived and properly denied Brewton's request to represent herself. And, Court of Appeals Case No. A04A2097 was recently dismissed.

[2] See *In the Interest of B. B.*, supra at 362 (1).

[3] (Footnote omitted.) Id.

[4] Id. at 362 (2).

[5] Id.

assisting in her defense, was unable to knowingly or voluntarily waive her right to represent herself, and was incapable of independently handling an appeal. Even Brewton acknowledges that it is "inherently contradictory to declare an individual incompetent, yet declare him able to knowingly and intelligently 'waive' his right to counsel." The juvenile court observed Brewton as she testified and determined that she was incapable of making a voluntary waiver of her rights. We find no error.[6]

Moreover, Brewton has not raised an ineffective assistance of counsel claim nor has she articulated any harm in the juvenile court's appointment of counsel. To the contrary, a review of the records in Brewton's four appeals reveals that her counsel made skilled inquiry into the facts, aided Brewton in legal interpretation, insisted upon regularity of the proceedings, and prepared and submitted Brewton's defense. As we previously found in ruling on this issue, "without harm, the alleged error presents no basis for reversal."[7]

3. Brewton contends the evidence was insufficient to support the juvenile court's order terminating her parental rights. We disagree. The decision to terminate parental rights is a two-step process. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[8] If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interests.[9] This Court reviews the evidence in the light most favorable to the state, and we defer to the juvenile court's factfinding; we do not weigh the evidence or determine witness credibility.[10]

(a) *Parental Misconduct or Inability.* The first two criterion, that B. B. was deprived and that Brewton's lack of proper parental care caused her deprivation, are clearly demonstrated by the facts in the record. Under Georgia law, a deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental,

---

[6] See id.; see generally *J. E. W. v. State*, 256 Ga. 464, 467 (2) (349 SE2d 713) (1986) (the question of whether a party is capable or incapable of making a knowing and intelligent waiver of her rights is to be answered by the trial judge and will be accepted by this Court unless such determination is clearly erroneous).

[7] *In the Interest of B. B.*, supra at 362 (2).

[8] OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).

[9] OCGA § 15-11-94 (a).

[10] *In the Interest of A. L. E.*, 248 Ga. App. 213 (546 SE2d 319) (2001).

or emotional health or morals."[11] One factor that juvenile courts must consider in determining whether a child lacks proper parental care and control is whether the parent possesses a medically verifiable health deficiency of such nature or duration as to render the parent unable to provide adequately for the child's needs.[12]

Here, an expert diagnosed Brewton with delusional disorder, psychotic disorder, cyclothymia, paranoid personality disorder, and anti-social personality disorder. He opined that Brewton's mental problems would interfere with her ability to meet B. B.'s needs and that she would be a danger to a child in her care. At the remand hearing, the expert testified that Brewton's ability to distinguish between fantasy and reality had worsened since her evaluation 14 months earlier, and he opined that her mental condition would deteriorate. Despite overwhelming evidence to the contrary, Brewton denied having mental health problems and steadfastly refused to seek treatment. The trial court was entitled to conclude that Brewton's mental illness, coupled with her refusal to seek treatment, render her incapable of providing adequately for B. B.[13]

Furthermore, the Georgia Code also authorizes the juvenile court to consider the following factors in deciding whether a child is deprived: physical, mental or emotional neglect of the child or evidence of past physical, mental or emotional neglect of the child or of another child by the parent.[14] In the present case, the juvenile court properly considered Brewton's neglect of her older three children and of B. B. in determining that her lack of proper parental care and control caused B. B.'s deprivation.

In cases in which the child is not in the custody of the parent who is the subject of the termination proceeding, the juvenile court shall also consider whether the parent, without justifiable cause, failed significantly for a period of one year or longer prior to the filing of the termination petition to provide for the care and support of the child or to comply with a court-ordered reunification plan.[15] Here, the record establishes that Brewton failed to support B. B. and failed to comply with her case plan goals.[16]

The third and fourth criteria used to determine parental misconduct or inability — that such cause of deprivation is likely to

---

[11] OCGA § 15-11-2 (8) (A).

[12] OCGA § 15-11-94 (b) (4) (B) (i); *In the Interest of D. D. B.*, 263 Ga. App. 325, 327 (1) (587 SE2d 822) (2003).

[13] See *In the Interest of D. D. B.*, supra at 327 (1) (b); *In the Interest of M. L.*, 259 Ga. App. 534, 536 (1) (b) (578 SE2d 190) (2003).

[14] OCGA § 15-11-94 (b) (4) (B) (v).

[15] OCGA § 15-11-94 (b) (4) (C) (ii)-(iii).

[16] See *In the Interest of J. J.*, 259 Ga. App. 159, 162 (575 SE2d 921) (2003).

continue or will not likely be remedied, and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional or moral harm to the child — are also demonstrated in this case.[17] Brewton's past and present conduct reveals that B. B.'s deprivation is likely to continue.[18] At the time of the termination hearing, Brewton lacked permanent housing, and the Department had no verification that she was employed. In addition, Brewton was in denial about her mental health condition and refused all treatment. The court was permitted to consider the mother's unwillingness to consistently treat her mental condition in determining that the deprivation was likely to continue.[19] Moreover, the expert's testimony was unequivocal: Brewton would be a danger to a child in her care, and her mental condition likely would deteriorate.

The same circumstances that support a juvenile court's conclusion that a child is deprived due to a lack of proper parental care and that such deprivation is likely to continue also support a conclusion that continued deprivation would likely cause the child serious harm.[20] B. B. was diagnosed with ADHD and oppositional defiant behavior and was taking medications and undergoing therapy to treat her disorders. The juvenile court heard testimony that the child became more withdrawn in Brewton's presence during Brewton's visits. And an expert testified that B. B. lacked permanency in her life and was in danger of being in foster care drift. Clearly, continued deprivation would likely cause B. B. serious harm.[21]

(b) *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of B. B., including the need for a stable and secure home.[22] The same evidence showing parental misconduct or inability may, and here does, establish that the termination of Brewton's parental rights is in B. B.'s best interest.[23]

Since a rational trier of fact could have found (1) clear and convincing evidence of parental misconduct or inability and (2) that termination of parental rights was in the best interest of B. B., the juvenile court did not err in terminating Brewton's parental rights to B. B.

---

[17] See OCGA § 15-11-94 (b) (4) (A) (iii)-(iv).

[18] See *In the Interest of M. L.*, supra at 536 (1) (c).

[19] See *In the Interest of D. D. B.*, supra at 328 (1) (c).

[20] See *In the Interest of M. J. T.*, 255 Ga. App. 553, 556 (565 SE2d 877) (2002).

[21] See *In the Interest of M. L.*, supra at 536-537 (1) (d).

[22] OCGA § 15-11-94 (a).

[23] See *In the Interest of M. L.*, supra at 537 (2).

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED JULY 30, 2004.

*Kelley A. Dial,* for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Laura W. Hyman, Assistant Attorney General, Neel & Smith, Barry S. Haney,* for appellee.