A07A0235, A07A0236. IN THE INTEREST OF Am. T. et al., children (two cases).
(644 SE2d 923)

SMITH, Presiding Judge.

The parents of Am. T., An. T., and S. T. appeal an order terminating their parental rights. In a single enumeration of error, the father contends that the State failed to prove by clear and convincing evidence that his parental rights should have been terminated. In two enumerations of error, the mother contends that the evidence was insufficient to terminate her parental rights and that the evidence was insufficient to show that termination was in the best interests of the children. After reviewing the record, we find otherwise and affirm.

---

In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the evidence must be reviewed in the light most favorable to the juvenile court's determination. *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000). When the evidence shows that any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights have been lost, we defer to the juvenile court's factfinding. Id.

So viewed, the evidence shows that the parents first came to the attention of the Department of Family and Children Services (DFACS) in March 2002 due to their neglect of the children. In February 2004, after the father whipped two of the children with a belt, DFACS filed a petition for a court-ordered case plan. In March, a court-ordered plan was put in place, and the children were sent to an aunt in Tennessee while the mother recovered from neck surgery. The juvenile court found that the children were deprived, "but not to the extent that they should be removed from their parents." A DFACS representative testified that the family abided by the safety plan.

In August 2004, a DFACS case manager visited the home and found almost no food in the house. A prescription for a thirty-day supply of morphine which had been filled that week was found with only five pills remaining. Both parents were taking "a substantial amount" of sedative medications. At the time of the home visit, the mother was "not coherent . . . due to medications," and the parents were unable to supervise the children. DFACS took emergency custody of the children on August 20, 2004.

In September 2004, the juvenile court held a deprivation hearing and entered a disposition order incorporating the language of the 72-hour hearing order entered in August. Evidence was presented to the juvenile court that the parents had been visibly under the influence of excessive prescription sedatives, including an incident in which they drove the children to a doctor's appointment and the mother "passed out" in the doctor's office, while the father was "completely passed out" in the family van and could not be aroused; the doctor called 911. The juvenile judge questioned the father in open court because he appeared to be under the influence of drugs. Both the mother and father admitted to taking numerous prescription medications daily, including several narcotics. A drug screen showed that both parents tested positive for the presence of opiates and benzodiazepines. At the time of the deprivation hearing, the children had been sent home from Tennessee because one of them had sexually molested his cousin, and the child admitted the allegation to DFACS.

The juvenile court found the children to be deprived. Neither these orders nor successive continuation orders finding the children to be deprived were appealed.

The original case plan proposed by DFACS for the children, effective in September 2004, sought reunification of the family. The plan set seven goals for the parents: (1) obtain and maintain a source of income; (2) provide stable, clean, and safe housing; (3) obtain childcare service; (4) complete parenting classes; (5) complete a drug and alcohol assessment and comply with random drug screens; (6) complete psychological evaluations and follow all recommendations; and (7) cooperate with DFACS. At a judicial review approximately one year after the initial case plan, the court found that the parents had failed to complete the initial case plan, including the requirement that they report for a drug screen. The DFACS plan was changed to one for nonreunification.

A petition for termination of parental rights was filed in October 2005, and a hearing was held in January 2006. In its order, the juvenile court found that the petitioner had shown clear and convincing evidence of parental misconduct, that the children were deprived as a result of the parents' lack of parental care and control, "that such deprivation is likely to continue or will not likely be remedied, and that the continued deprivation will cause serious physical, mental or emotional harm to the children." The court found that it was in the best interests of the children for parental rights to be terminated. This appeal followed.

The termination of parental rights requires the juvenile court to undertake the two-step process outlined in OCGA § 15-11-94 (a), first considering the four findings outlined in OCGA § 15-11-94 (b) (4) (A). Because the parents did not appeal the juvenile court's findings of deprivation, they remain bound by them, leaving for determination only the remaining three criteria under that subsection. See *In the Interest of J. S. G.*, 242 Ga. App. 387, 388 (1) (529 SE2d 141) (2000). Those three criteria require proof that:

> (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;
>
> (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and
>
> (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

OCGA § 15-11-94 (b) (4) (A). The court then considers whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child. OCGA § 15-11-94 (a).

Here, the record contains evidence of all these factors. A DFACS caseworker testified that the parents had completed psychological testing but had failed to complete any of the other case plan goals, including following the recommendations of the psychologist, obtaining child care, or attending random drug screens. They did not begin the required parenting classes until the evening before the termination hearing.

All three children have significant psychiatric issues. S. T. and An. T. have had psychotic episodes, An. T. hears voices, and both were in residential treatment facilities at the time of the hearing. An. T. on examination showed physical signs of sexual abuse. Am. T. is in therapeutic foster care and suffers from dissociative states. The children had to be separated from one another because of sexual and aggressive behavioral issues.

A psychologist who examined the parents noted that both had morphine in their blood "far above therapeutic levels." Both are taking multiple prescription drugs, some of which "are potentially addictive if used in high levels or for an extended period of time." He noted that the mother "has very little insight" as to her psychological problems and has refused to accept responsibility for any parenting problems, and thus would be unlikely to make any changes in her behavior. She suffers from anxiety and depressive symptoms, due at least in part to unresolved sexual abuse issues in her past. The father, while more open with regard to his problems, was according to the psychologist "pretty overwhelmed just with dealing with himself." He suffers from severe depression. The psychologist was of the opinion that the children should not be placed back in the home unless both parents made "substantial progress" in dealing with habit-forming medications, taking counseling to address their psychiatric issues, and completing parenting classes.

The psychologist also prepared a global assessment of function score on both parents; the father had a score of 50, representing significant impairment in daily functioning, while the mother had a "slightly better" score of 55. According to the psychologist, a score below 50 indicates that a person is incapable of caring for himself or herself and may require institutional care.

The mother testified and acknowledged that the use of drugs by her and the father was an obstacle to return of the children. She contended, however, that her doctor told her there was nothing he could do besides surgery, which she could not afford. She acknowledged that she took her pain medication and her sleeping pills in preference to prescribed high blood pressure medication, even though that condition was potentially life-threatening, and she denied that her medications made her drowsy.

The guardian ad litem for the children recommended termination, based on the parents' "obvious major addiction to drugs" and consequent inability to care for the children. The court appointed special advocate (CASA) agreed that the parents' rights should be terminated because of their failure to comply with the case plan, adding that the parents were telling their children that they were complying with the case plan but DFACS was not cooperating, which "only served to anger and confuse their children."

The deprivation orders, combined with the parents' failure to comply with the case plan and their unwillingness or inability to address their mental health issues or substance abuse problems, show that the parents' lack of parental care or control caused the children's deprivation. *In the Interest of F. C.*, 248 Ga. App. 675, 677-678 (1) (549 SE2d 125) (2001); see also OCGA § 15-11-94 (b) (4) (B) (factors to consider in determining whether the child is "without proper parental care and control" include the parent's mental health deficiency and/or the parent's drug abuse).

In making its decision, the court was authorized to consider the parents' unwillingness to seek treatment in determining that the deprivation was likely to continue. *In the Interest of D. D. B.*, 263 Ga. App. 325, 328 (1) (c) (587 SE2d 822) (2003). Even though the parents took some minimal steps toward complying with the case plan, such improvements are not conclusive of parental fitness in light of a "long history of deficiencies in the supervision of [their] children, along with the other evidence detailed above." *In the Interest of A. G.*, 253 Ga. App. 88, 90 (1) (c) (558 SE2d 62) (2001).

Moreover, as with *In the Interest of R. N. O.*, 281 Ga. App. 161 (635 SE2d 420) (2006), the evidence shows that one of the children has "psychosexual behavioral problems and a history of aggression against [the other children] that required their separate placement in foster care. Courts are clearly authorized to consider the special needs of a child and the [ ]parents' inability to provide for those needs. [Cits.]" (Punctuation omitted.) Id. at 162 (2). Further, the evidence shows that the continued deprivation would likely cause serious mental and emotional harm to the children. The parents have very limited ability to care for themselves because of their own unresolved psychiatric issues and drug dependency, and it is highly improbable that they could provide the special care needed by these children. See, e.g., *In the Interest of M. W.*, 275 Ga. App. 849, 854 (3) (622 SE2d 68) (2005). The record contains ample evidence that the children were deprived, the deprivation was attributable to a lack of proper parental care, the deprivation was likely to continue, and it was likely to cause serious mental, emotional, and moral harm to the children. See *In the Interest of A. M. V.*, 222 Ga. App. 528, 531-532 (474 SE2d 723) (1996).

With respect to the best interests of the children, "[t]he same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). A rational trier of fact could have found that termination of parental rights was in the best interests of the children, and the juvenile court therefore did not err in terminating appellants' parental rights to the children.

*Judgments affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED APRIL 10, 2007.

*Josephine B. Jones*, for appellant (case no. A07A0235).
*Robert M. Bearden, Jr.*, for appellant (case no. A07A0236).
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General, W. Ashley Hawkins*, for appellee.