A02A0660. IN THE INTEREST OF M. J. T., a child.
(565 SE2d 877)

SMITH, Presiding Judge.

The father of M. J. T. appeals from an order entered by the Juvenile Court of Glynn County terminating his parental rights, contending that the Department of Human Resources failed to carry its burden of proof as set out in OCGA § 15-11-94. We find that the trial court did not err in concluding that the Department had shown clear and convincing evidence of parental misconduct or inability and that termination of the father's rights was in the best interest of the child. We therefore affirm the order terminating the father's parental rights.

The decision to terminate parental rights is a two-step process. The juvenile court must first determine whether clear and convincing evidence exists of parental misconduct or inability. If such evidence exists, the court must then decide whether termination of the parent's rights is in the best interest of the child, considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a).

Parental misconduct or inability is demonstrated by showing that the criteria listed in OCGA § 15-11-94 (b) (4) (A) have been met.

These criteria are: (i) that the child is deprived; (ii) that lack of proper parental care or control is the cause of the child's deprivation; (iii) that this cause of the child's deprivation is likely to continue or will not likely be remedied; and (iv) that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. Id. These same factors may also support a finding that terminating the parent's rights is in the child's best interest. *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). In reviewing a decision terminating parental rights, this court views the evidence in a light most favorable to the appellee. *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996). The standard of review on appeal is whether, viewing the evidence in this light, a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should be terminated. We must defer to the trial court's findings of fact and affirm unless this standard is not met. *In the Interest of J. O. L.*, 235 Ga. App. 856 (510 SE2d 613) (1998).

In this case, the criteria in OCGA § 15-11-94 (b) (4) (A) were met. The record shows that the Department became involved with M. J. T. and her parents immediately after the child's birth. The mother has a mental disability, and the father has both a physical disability and mental problems. The parents engaged in domestic violence and could not manage their affairs. M. J. T. was placed in the Department's emergency custody, and the Department filed a deprivation petition. After a hearing, the juvenile court entered an order finding M. J. T. deprived and awarding custody to the Department. That order was not appealed.

Since that order was not appealed, the father is bound by that finding. The second criterion, lack of proper parental care or control causing the deprivation, was shown clearly by the record. His conduct, both prior to M. J. T.'s birth and after, demonstrates that he is unable to care for her properly.

The Department then developed a case plan for reunification, which was approved by the court, and an order was entered incorporating the plan. The parents were required to learn effective nonviolent methods of communication, obtain mental and emotional stability, learn parenting skills, and maintain a safe home for the child. In addition, the father was required to take steps to learn to control his anger.

Unfortunately, neither parent complied with the plan, and neither attained its goals. The Department filed a petition to terminate the rights of both parents less than a year after taking custody of M. J. T. The mother agreed that her parental rights should be terminated. She acknowledged that she has mental problems, is subject to hallucinations, and must take "too much medication" to be able to

take care of her daughter. She testified at the hearing that she did not believe the father could parent M. J. T. She testified that her husband had abused her and beat her, pulled her hair, and "smacked" her in the face, that he even mistreated her mother, and that he had mental problems but refused to take his medication.

The social services case manager for the Glynn County Department of Family & Children Services (DFACS) testified that domestic violence had continued even after DFACS obtained custody of the child, and both parents had agreed to the termination of their parental rights after the father was incarcerated in Camden County when he became violent with a neighbor. He also had tried to kill himself and had been admitted to a psychiatric hospital. In the caseworker's opinion, neither parent was capable of caring for the child. A mental health professional at an adult day treatment program testified that the father was diagnosed as schizophrenic and for the last month and a half he was supposed to be in adult day treatment five days a week from 9:00 a.m. to 2:00 p.m., but had appeared only three times.

The father testified at the hearing, and he repeatedly voiced doubts that M. J. T. was his biological daughter. He admitted he hit his wife, saying, "I just couldn't hold my temper." He also admitted he had been convicted on felony charges involving rape and sodomy and had been in a "medical facility prison" in California twice, once on those charges and once "for a knife." He admitted having drug problems in the past and had been arrested for "marijuana, too, a long time ago" but denied present drug use. He was forced to acknowledge, however, that as recently as a month and a half before the hearing he had smoked marijuana. He denied he had been diagnosed with schizophrenia or that he had mental health problems. Although the mental health professional testified that he had been discharged from the crisis unit on "self-administration of medications," the father denied that, testifying that while in the mental hospital in Georgia he had been given only Benadryl and he refused to take injectable medications because they made him feel drunk and sick. He later admitted he was not taking his prescribed medication because it makes him feel drowsy and sick and makes his "head unstable." He also testified he had not attended the counseling sessions because he thought they were "silly." He testified he "stuck poison" in his arm and tried to kill himself because of the way DFACS had treated him. He has never paid child support for his daughter. This evidence clearly supports the conclusion that the father, as well as the mother, is unable to care for his one-year-old daughter and that inability is the cause of her deprivation.

The juvenile court was authorized to consider the father's past behavior in determining whether the conditions of deprivation are likely to continue. *In the Interest of D. W. A.*, 253 Ga. App. 346, 348

(559 SE2d 100) (2002). The court need not reunite the child with her father to obtain current evidence regarding deprivation. Id. Contrary to the father's argument, this case is unlike *In the Interest of A. G. I.*, 246 Ga. App. 85 (539 SE2d 584) (2000); *In the Interest of J. M.*, 251 Ga. App. 380 (554 SE2d 533) (2001); and *In the Interest of D. F.*, 251 Ga. App. 859 (555 SE2d 225) (2001). In those cases, we found that insufficient evidence had been presented of certain factors. But here, given the father's mental problems and his complete refusal to take his medication or attend counseling sessions, coupled with the father's history of violence and prior criminal history and his failure to maintain a stable home or earn anything but a bare subsistence living, the juvenile court was authorized to find that the child's deprivation would continue if returned to her father. This evidence also supports a finding that the child would suffer harm if returned to the father. *In the Interest of J. K.*, 239 Ga. App. 142, 146 (1) (520 SE2d 19) (1999).

Finally, M. J. T.'s maternal grandfather has been caring for her, and DFACS has determined that he represents a suitable placement for the child. The grandfather wishes to adopt the child. Adding this factor to the negative factors supporting the finding of parental misconduct or inability, we must conclude that the juvenile court properly found that it was in the best interest of M. J. T. that her father's parental rights be terminated.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 28, 2002.

*John P. Rivers*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, James A. Chamberlin, Jr.*, for appellee.