A03A1035. IN THE INTEREST OF M. D. B., a child.
(586 SE2d 700)

SMITH, Chief Judge.

The father of M. D. B. appeals the juvenile court's order terminating his parental rights in the child. He contends that the evidence was insufficient to support the termination and that the juvenile court erred in refusing to consider placing the child with either the father's parents or his sister after terminating his parental rights. We find no merit in any of the father's contentions, and we affirm the judgment terminating his parental rights in M. D. B.

> The decision to terminate parental rights is a two-step process. The juvenile court must first determine whether clear and convincing evidence exists of parental misconduct or inability. If such evidence exists, the court must then decide whether termination of the parent's rights is in the best interest of the child, considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a).

*In the Interest of M. J. T.*, 255 Ga. App. 553 (565 SE2d 877) (2002). The court determines parental misconduct or inability by a finding that the child is deprived, that the deprivation was caused by lack of proper parental care or control, that the cause of deprivation is likely to continue or will not likely be remedied, and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). *In the Interest of R. W.*, 254 Ga. App. 34, 36 (2) (a) (561 SE2d 166) (2002). These factors also may be used to support a finding that termination of parental rights is in the best interest of the child. *M. J. T.*, supra, 255 Ga. App. at 554.

On appeal we must view the evidence in a light most favorable to the juvenile court's determination. *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000). We do not weigh the evidence or determine the credibility of witnesses, and we must defer to the juvenile court's findings of fact if supported by the evidence. The evidence is sufficient if a rational trier of fact could have found by clear and convincing evidence that the parent's rights have been lost. *M. J. T.*, supra, 255 Ga. App. at 554; *R. W.*, supra, 254 Ga. App. at 34.

Viewed in the light most favorable to the juvenile court's findings

of fact, the evidence showed that at the time M. D. B. was born, both his parents were abusing drugs or alcohol or both. During the year before M. D. B.'s birth, the father was convicted of driving under the influence of marijuana, and the mother tested positive for drugs when she gave birth in February 2001. The father appeared at the hospital intoxicated and passed out in the waiting room.[1] The Bulloch County Department of Family and Children Services (DFACS) took emergency custody of the child.

A deprivation action was initiated. M. D. B. was found to be deprived, and custody was awarded to DFACS. Jurisdiction was later transferred to Chatham County. In proceedings in Chatham County, M. D. B. was again found to be deprived, and custody was awarded to the Chatham County DFACS. This order was not appealed.

DFACS developed a reunification case plan, requiring the father to obtain a substance abuse assessment, complete a substance abuse treatment program, submit to random drug screens, remain drug and alcohol free for six months, complete parenting classes, complete a psychological evaluation and follow recommended treatment, select a primary physician and one pharmacy, and visit the child. This plan was incorporated into an order by the juvenile court in March 2001.

In April 2002, DFACS filed a petition to terminate both parents' parental rights. Hearings were held in June and in August 2002, when M. D. B. was almost 18 months old. After all evidence was presented, the child's guardian ad litem and his court-appointed special advocate recommended that the father's parental rights be terminated. The juvenile court informed the parties that it appeared that termination of parental rights was in the child's best interest. After this oral pronouncement, the father filed a notice of appeal on August 21, 2002. A written order was later entered, on August 28, 2002, terminating the parental rights of the mother and the father.

1. The father raises the sufficiency of the evidence to support the termination. The juvenile court's deprivation order, extended on February 12, 2002, was not appealed. The father is therefore bound by the court's finding of deprivation. *M. J. T.*, supra, 255 Ga. App. at 554. It is clear that the cause of M. D. B.'s deprivation was lack of proper parental care or control. OCGA § 15-11-94 (b) (4) (B) (i) provides that in deciding whether a child lacks proper parental care or control the juvenile court should consider whether the parent suffers from a medical condition or a mental or emotional deficiency that would render the parent unable to meet the child's needs. In this case, the father has been diagnosed with dysthymic disorder, chronic depression, and a personality disorder with antisocial and dependent

---

[1] The father explained: "I drunk a little bit of vodka and fell out in the hospital."

features. He also has problems with impulse control. Testimony also was presented showing that despite his denials, the father had a history of untreated substance abuse.

The father argues that the evidence did not support the juvenile court's finding that the child's deprivation was likely to continue or would likely not be remedied, as required by OCGA § 15-11-94 (b) (4) (A) (iii). We do not agree.

A parent's past conduct may properly be considered in deciding this issue. *In the Interest of B. W.*, 254 Ga. App. 63, 64 (1) (561 SE2d 199) (2002). Although past problems do not necessarily compel a termination of parental rights, they can support such a ruling under the proper circumstances. Here, clear and convincing evidence supported the juvenile court's conclusion that the father's past problems had not been resolved. The caseworker testified that when the father visited her office he was "so out of it" that he did not remember conversations or even that he had been there. He once refused to submit to a drug screen on the ground that he would test positive. Notwithstanding two referrals to drug and alcohol programs, the father did not complete one. He testified that he did not have a drug problem and had not attended a drug and alcohol program for financial reasons. He also testified that he had not learned anything in the parenting class. A clinical psychologist who tested the father testified that in her opinion, "a child would not be safe in his care." This evidence supports the juvenile court's decision to terminate the father's parental rights.

2. The father maintains that the juvenile court also erred after terminating his parental rights by failing to consider his parents as a proper placement for M. D. B. We do not agree.

OCGA § 15-11-103 (a) (1) provides:

> If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family. . . . A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.

The juvenile court determined that placement with his paternal grandparents was not in M. D. B.'s best interest.

We note that the father failed to appeal a prior order of the juvenile court in which the issue of family placement was considered and rejected. But even though this issue had been previously decided, the juvenile court heard additional evidence at the termination hearing regarding the grandparents' suitability and reaffirmed its prior rul-

ing. The assigned DFACS caseworker testified that she ruled out placement with the child's paternal grandparents based upon her concerns about their health. The grandmother suffered from asthma and heart problems, the grandfather was a diagnosed schizophrenic, and both grandparents receive disability benefits. The grandmother had been hospitalized several times during the 18 months preceding the termination hearing, including one hospitalization for exhaustion. The grandfather, a Vietnam veteran, has recurrent hallucinations and delusional beliefs, and he also was hospitalized several times during this period.

In addition, the caseworker testified that M. D. B. had not bonded with his grandparents but had done so with his foster parents, who were prospective adoptive parents. Based on this evidence, the juvenile court did not abuse its discretion in determining that placement with his paternal grandparents was not in M. D. B.'s best interest. *In the Interest of C. L. R.*, 232 Ga. App. 134, 139 (3) (501 SE2d 296) (1998).

3. The same is true for the juvenile court's failure to place M. D. B. with the father's sister, who had expressed interest in parenting him. The caseworker informed the court that the child's aunt had provided some misleading information to the department during their investigation. She reported that she was a paralegal, but according to DFACS, although she had trained as a paralegal, she worked as a waitress. She also told DFACS that she had a boyfriend, but the department learned that this "boyfriend" was actually her husband, whom she was divorcing. At the time of the last panel meeting she was unemployed and dependent upon her ex-husband and her parents for support. And when she did work, she left her own child in the care of her father, M. D. B.'s paternal grandfather. Although she did have a place to live, the department felt that her situation was not stable enough to take in another child.

After hearing the evidence, both the guardian ad litem and the court-appointed special advocate recommended that termination of parental rights was in M. D. B.'s best interest. The juvenile court did not abuse its discretion in failing to place M. D. B. with his paternal aunt. *C. L. R.*, supra, 232 Ga. App. at 139 (3).

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED AUGUST 19, 2003.

*Mark J. Nathan*, for appellant.
*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman,*

*Assistant Attorneys General, Beckmann & Lewis, Leo G. Beckmann, Jr.*, for appellee.