A04A0808. IN THE INTEREST OF S. S., a child.

(600 SE2d 679)

PHIPPS, Judge.

S. S.'s natural father appeals an order of the juvenile court terminating his parental rights and awarding custody of his son to the Department of Human Resources Division of Family & Children Services (DFCS). Appellant does not challenge the termination of his parental rights, but contends that the court should have awarded custody of S. S. to his (appellant's) mother.

At the termination hearing, Jackie Bridges, a caseworker with the Seminole County DFCS, testified that DFCS had received a report in November 2001 that S. S. — then two months old — was being physically abused by appellant. The reporter also told DFCS that there was a warrant for appellant's arrest, and that he planned to flee the state. Bridges acted quickly to obtain an emergency order for shelter care for S. S.

Bridges found S. S. living with his parents and other relatives. As she entered the house, appellant "ran out the back door." Bridges spoke with S. S.'s mother, who said that S. S.'s arm had been injured when appellant had jerked him to keep him from falling backward during a feeding. According to Bridges, S. S. had numerous bruises on his body, some fresh and others older and fading. In addition, S. S. was "extremely fearful," screamed constantly, was "rigid and stiff," and did not want to be held. Bridges took S. S. to a doctor, who x-rayed his arm and discovered "an old fracture."

A hearing was held the following day, and both parents appeared. They were not able to explain S. S.'s bruises. The juvenile court awarded temporary custody of S. S. to DFCS. After another hearing ten days later, the court found that S. S. was deprived, that both parents were incarcerated and unable to care for him, and that reunification efforts were not required.

According to Bridges, DFCS considered placing S. S. with relatives, but none came forward except for one who "withdrew after drug screens were asked for." Appellant's mother did not ask to be considered for placement. S. S. was therefore placed in foster care.

In April 2003, DFCS filed a petition to terminate the parental rights of appellant and S. S.'s mother. Appellant's mother attended the termination hearing and wanted S. S. placed with her. She testified that S. S. and his parents had been living with her up until the day before DFCS took S. S. into custody. She stated that she had changed S. S.'s diaper the day before he was taken into DFCS's custody, but had not seen any bruises on his body. She testified that she believed she could care for S. S., except that she might need financial help. She admitted that she had not visited S. S. since he had been placed in foster care and had not sent him any gifts, money, or clothes.

Tonya Bridges, a social services supervisor with the Early County DFCS, testified that her department had performed a home study of appellant's mother. The study had found that she had "a history with the Department when her own children were in her home for neglect issues"; that DFCS also had been involved with her granddaughter; that two other children in her care had had lice problems; that three of her seven children had been incarcerated; that her ex-husband had been convicted of molesting two of their children; that she had not visited S. S. and had no bond with him; and that, at the age of 64, she might be too old to care for an active toddler. Tonya Bridges also testified that appellant's mother had told DFCS that she worked two jobs and planned to put S. S. in daycare at DFCS's expense; and that she expected help in rearing S. S. from one of her daughters, who had been incarcerated, had a drug problem, and had not reared her own two children. Accordingly, DFCS concluded that appellant's mother's home was not an appropriate placement for S. S.

Jackie Bridges testified that S. S. had adjusted well to foster care, had no problems, and was "just a normal little two-year-old." She also testified that S. S. was attached to his foster parents and that they hoped to adopt him. Finally, she stated that S. S. would be emotionally harmed if he were removed from his foster parents, who are "the only family that he has known."

S. S.'s guardian ad litem testified that he believed that the rights of the parents should be terminated and that S. S. should remain in foster care.

After the hearing, the court terminated the parental rights of appellant and S. S.'s mother and granted custody of S. S. to DFCS. The court acknowledged that it was obligated to consider placing

S. S. in the home of a relative, but concluded that the evidence presented at the hearing showed that appellant's mother's home was not a suitable placement.

Under OCGA § 15-11-103 (a) (1),

> [i]f, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.

We review for abuse of discretion a juvenile court's determination that placement with a relative is not in the best interest of the child.[1]

Appellant contends that the court relied on inadmissible hearsay in concluding that his mother was an unsuitable placement for S. S. Appellant points out that much of the home study contained second-hand information about the experiences of his mother and other family members with DFCS and the criminal justice system.

Even if that hearsay evidence is disregarded, however, the record amply supports the court's conclusion that placing S. S. with appellant's mother would not be in the child's best interest. We note, among other things, her failure to attempt to establish a bond with him after he was placed in foster care, her relatively advanced age, and her lack of financial resources. We are also troubled by her professed failure to notice the extensive bruises on his body the day before he was taken into DFCS's custody.

The record shows, on the other hand, that S. S. was living with stable foster parents who had bonded with him and wanted to adopt him, and that removing him from their home would emotionally damage him. Under these circumstances, the court did not abuse its discretion in awarding custody to DFCS rather than to appellant's mother.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED MAY 26, 2004.

---

[1] See *In the Interest of M. D. B.*, 262 Ga. App. 796, 799 (2) (586 SE2d 700) (2003).

*Danny C. Griffin,* for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Lauren H. Williamson,* for appellee.