**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 6, 2025**

# In the Court of Appeals of Georgia

A24A1420. IN THE INTEREST OF M. J. E. B., a child.

DOYLE, Presiding Judge.

M. J. E. B. is a minor child born in January 2020, and her parents' parental rights were terminated in earlier proceedings. Her maternal great aunt ("Nancy") now appeals from a juvenile court order denying her petition for permanent placement/adoption and continuing the current placement with the Department of Family and Children Services ("DFCS"), which intended to place the child with her paternal aunt ("April"), who is also pursuing adoption. Nancy contends that the juvenile court erred because (1) the evidence was insufficient to support placement with April, and (2) the court failed to enter written findings of fact pursuant to OCGA

§ 15-11-321 (a) (2), regarding the least disruptive placement for the child. Finding no reversible error, we affirm.

The record is not materially disputed. M. J. E. B. was born in 2020, and after M. J. E. B.'s parents had their parental rights terminated in October 2021 — due in part to unrehabilitated drug abuse — the child was placed by DFCS into the custody of the child's maternal great aunt ("Carol") in late 2021. In September 2022, DFCS was informed that Carol had passed away, and her daughter ("Sara") had taken over caregiving responsibilities. DFCS assessed the suitability of Sara's home, and in the process, Sara tested positive for several drugs, and DFCS learned that the biological parents had contact with M. J. E. B. despite concerns regarding their ongoing drug abuse. DFCS's concerns were confirmed when two-year-old M. J. E. B. tested positive for marijuana and methamphetamine. In October 2022, M. J. E. B. was removed from Sara's home and placed with foster parents.[1]

The next month, DFCS held a team meeting that included DFCS staff, April (who lives in Texas), and Nancy (who lives in Alabama), and both relatives eventually began the evaluation process to adopt M. J. E. B. Following home studies, the homes

---

[1] The foster parents remained willing and able caregivers, but they did not intend to adopt M. J. E. B.

of both April and Nancy were approved as potential adoptive homes for M. J. E. B. Due to Nancy's potential to continue to expose the child to the unrehabilitated drug use of the parents, however, DFCS determined that it would recommend April as the better placement option.

In March 2023, Nancy filed a petition for permanent placement and adoption, and the following month, April and her husband did the same. The parties consented to modification of both petitions into petitions to intervene. Following an evidentiary hearing in December 2023, the juvenile court entered orders in January and February 2024 denying both petitions and maintaining permanent custody with DFCS to ensure monitoring. In February 2024, Nancy filed a motion to rescind or strike those orders, and the juvenile court granted the motion, rescinding both orders. After the parties submitted further briefing, the juvenile court entered a very similar order that maintained custody with DFCS because it would ensure continued involvement in the case, and the court acknowledged DFCS's intention to immediately place the child with April and her husband in Texas while they pursue the adoption process. Nancy now appeals.

1. Nancy argues that the juvenile court erred because there was insufficient evidence to support a placement with April. We disagree.

When, as here, an adoption petition has not been filed within six months of the termination order,[2] OCGA § 15-11-322 directs the juvenile court to regularly "review the circumstances of such child to determine what efforts have been made to assure that such child will be adopted."[3] The court is then authorized to "[e]nter such orders as it deems necessary to further adoption or if appropriate, other permanency options, including, but not limited to, another placement."[4] Generally, in placement decisions, "the juvenile court is given broad authority to weigh the evidence in these instances, and we are not authorized to substitute our judgment for that of the juvenile court."[5]

---

[2] As noted above, the parental rights to M. J. E. B. were terminated in 2021, and the adoption petitions in this case were filed in 2023.

[3] The reviews should take place at least every six months. See OCGA § 15-11-322.

[4] OCGA § 15-11-322 (3).

[5] (Citation and punctuation omitted.) *In the Interest of L. H.*, 370 Ga. App. 594, 597 (898 SE2d 605) (2024).

As a threshold matter, we note that although Nancy and April both petitioned for permanent placement, the juvenile court's order did not place M. J. E. B. with either one of them. Instead, it explicitly stated that,

> continued placement with [DFCS] ensures continuing monitoring. . . . It is therefore ordered that final placement of the minor child shall remain with [DFCS] with the acknowledgment that [DFCS] will immediately place the minor child with Petitioners April and [her husband], for continued monitoring over the next six (6) months until [April's] family can finalize the adoption process.

Therefore, the actual effect of the order was not to award placement to April; rather, it was to maintain placement with DFCS, with the understanding that DFCS viewed April and her husband as its preferred immediate placement for eventual adoption. So to the extent that Nancy argues that the juvenile court erred by placing M. J. E. B. with April, that argument is unavailing.

With respect to the placement with DFCS and its preference to April, it is undisputed that DFCS and the juvenile court viewed both April and Nancy as appropriate permanent placement options for M. J. E. B. Thus, the resolution boiled down to choosing between two viable alternatives, and as explained by the DFCS administrator, "we can't split [M. J. E. B.] in half . . . and based on what [she] has

already been through [including negative exposure to her mother], we feel like it's in the best interest to go to Texas with [April's] family." DFCS's decision was based on its view that in Texas, M. J. E. B. would be less likely to be exposed to any harms stemming from the unrehabilitated drug abuse by her birth parents, who lived in Georgia and Alabama.[6] And although the juvenile court did not share DFCS's concern regarding exposure to the biological parents, the court did express a concern with placing the three-year-old child with Nancy, who testified that she was 73, compared to April who was 45.[7] Likewise, the guardian ad litem and attorney-child advocate agreed with DFCS's decision to place M. J. E. B. with April and her family. Based on the record before us, especially the undisputed evidence that either placement option would be appropriate, the juvenile court's decision to maintain custody with DFCS to provide for continued monitoring and ultimate adoption by April was not an abuse

---

[6] At the time of the December 2023 hearing, the biological mother lived near Nancy in Alabama, and the biological father was incarcerated.

[7] At the hearing, the juvenile court judge, who acknowledged being 74 himself, noted that "logic tells us that" a significantly younger adult would have a more ease of caregiving and a better chance of living beyond the child's age of majority. See generally *In the Interest of S. S.*, 267 Ga. App. 601, 603 (600 SE2d 679) (2004) (noting advanced age can be weighed against a potential custodian in connection with a termination of parental rights).

of its discretion. Accordingly, Nancy's challenge to the evidentiary basis for the order does not require reversal.[8]

2. Nancy also contends that the juvenile court erred because it did not enter a written finding of fact "reflecting its consideration of . . . [t]he least disruptive placement for such child," under OCGA § 15-11-321 (a) (2). We disagree that any error occurred in this regard.

OCGA § 15-11-321 (a) provides:

*When a court enters an order terminating the parental rights of a parent . . .* a placement may be made only if the court finds that such placement is in the best interests of the child and in accordance with such child's court approved permanency plan created pursuant to Code Sections 15-11-231 and 15-11-232. In determining which placement is in a child's best interests, the court shall enter findings of fact reflecting its consideration of the following:

(1) Such child's need for a placement that offers the greatest degree of legal permanence and security;

(2) The least disruptive placement for such child;

---

[8] See *In the Interest of L. H.*, 370 Ga. App. at 597 (affirming the juvenile court's choice between two "good families").

(3) Such child's sense of attachment and need for continuity of relationships;

(4) The value of biological and familial connections; and

(5) Any other factors the court deems relevant to its determination.[9]

According to the emphasized language above in subparagraph (a), this Code section addresses the context of terminating parental rights — the findings that must be made in the initial placement after termination. Here, by contrast, the order Nancy challenges was entered more than two years after the parents' rights had been terminated, and it was in the context of the parties' petitions seeking to intervene in the ongoing process of continuing court review addressed by OCGA § 15-11-322, which provides, in relevant part:

> If a petition seeking the adoption of a child whose parents have had their parental rights terminated or surrendered is not filed within six months after the date of the disposition order, the court shall then, and at least every six months thereafter so long as such child remains unadopted, review the circumstances of such child to determine what efforts have been made to assure that such child will be adopted. The court shall:

---

[9] (Emphasis supplied.)

(1) Make written findings regarding whether reasonable efforts have been made to move such child to permanency;

(2) Evaluate whether, in light of any change in circumstances, the permanency plan for such child remains appropriate; and

(3) Enter such orders as it deems necessary to further adoption or if appropriate, other permanency options, including, but not limited to, another placement.

Here, the juvenile court's order did make findings pertinent to OCGA § 15-11-322. Specifically, the juvenile court's order explicitly found that permanent placement in either home would be appropriate, and it did not find any reason not to accept the placement with April. These findings address the reasonableness of efforts toward moving M. J. E. B. to permanency, and they address the appropriateness of the permanency plans in place and being pursued. Further, it was clear from the hearing transcript that the juvenile court did consider the potential disruption by moving to Texas with April, noting in part that "children are pretty resilient" and that moves across state lines occur in traditional family settings as well.

We note that Nancy's appellate brief refers to a comment made by the juvenile court during this colloquy that "[t]here's no reason to believe in this case there'd be

no significant long-term emotional harm experienced by [M. J. E. B.] as a result of leaving this area of the world and moving to Texas. . . ." It is difficult to discern if the court merely misspoke because it immediately followed a clear slip of the tongue that after a divorce "it's distressful . . . [that] *children have to live with one child [sic] instead of the other*[10] and see them every other weekend now instead of every night. But, again, is there any significant long-term harm emotional harm caused by that separation?'" In context, this colloquy is not a clear finding of harm, and no finding of harm was entered in the juvenile court's written order. But it does demonstrate the juvenile court's consideration of the disruption caused by the move to Texas. Ultimately, the juvenile court found that the disruption was not a sufficient reason to depart from DFCS's stated preference, based in part on the long-term stability achieved through adoption by April and her husband.

In light of the procedure and history of this case, the record supports the juvenile court's findings and exercise of discretion, and the court's written order appropriately reflected those findings. Accordingly, we discern no basis for reversal.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[10] (Emphasis supplied.)